(65 App. Div. 293.)

BRADLEY v. VAN WYCK, Mayor of City of New York, et al.

(Supreme Court, Appellate Division, First Department. November 15, 1901.)

1. MUNICIPAL CORPORATIONS — NEW YORK PARK BOARD — COMMISSIONERS OF
   PARKS—POWERS—STATUTES.
       Laws 1897, c. 556, as amended by Laws 1900, c. 627, authorized the
   erection of a library building on Bryant Park, in New York City; and
   the department of public parks was authorized to prepare and submit to
   the board of estimate and apportionment forms of contracts, specifica-
   tions, and bonds for the faithful performance of the work, and to adver-
   tise for bids or proposals for the work on the approval of the same by
   the board of estimate and apportionment. The new charter of the city
   of New York (Laws 1897, c. 378), which went into effect January 1, 1898,
   provided in section 607 that the head of the department of public parks
   should be called the "Park Board," which should consist of three mem-
   bers, to be known as the "Commissioners of Parks," and that in appoint-
   ing such commissioners the mayor should specify the borough or bor-
   oughs in which they should have, respectively, administrative jurisdic-
   tion; and by section 616 it was declared that the commissioner for the
   boroughs of Manhattan and Richmond should possess all powers pre-
   viously vested in the department of parks of the city, or the commission-
   ers of parks, so far as the same should affect the control, care, man-
   agement, etc., or administrative jurisdiction of the parks within the bor-
   oughs of Manhattan and Richmond. Held that, Bryant Park being in the
   jurisdiction of the commissioner of Manhattan and Richmond, it was
   evident from section 616 of the charter that it became his duty to pre-
   pare the contracts, to cause the advertisements to be inserted, to super-
   intend the construction of the building, and also to receive all bids and
   proposals for doing the work, etc.

2. SAME—STATUTES—CONSTRUCTION—BIDS FOR PUBLIC WORK—ADVERTISEMENT
   —SUFFICIENCY.
       Laws 1897, c. 556, as amended by Laws 1900, c. 627, authorizing the
   construction of a library building on Bryant Park, in New York City,
   provided that advertisements for proposals for bids for the work should
   be published in the City Record and in two daily newspapers at least
   15 days, consecutively, before the time fixed for the closing of the bids.
   Held, that the publication was not insufficient because the City Record
   was not published on two Sundays and a holiday falling within the
   period when the publication was made, it appearing that such paper is
   not regularly published on Sundays and holidays.

3. SAME—SPECIFICATIONS—DESCRIPTION OF MATERIALS—STATUTE.
       Inasmuch as Laws 1897, c. 556, as amended by Laws 1900, c. 627, au-
   thorizing the construction of a library building in Bryant Park, New
   York City, did not prescribe that the contract or specifications should
   specify the particular variety of marble to be used in the building, and
   the specifications prescribed the quality of marble to be used, its color,
   chemical composition, and crushing strength, and provided that the gen-
   eral color and character should be similar to the character of a well-
   known building in the city, a contention that the specifications were un-
   just and unfair, and did not admit of full and free competition, in that
   they failed to specify the variety of marble, was without merit.

**4. SAME—INSPECTION BY ARCHITECT—REGULATIONS—REASONABLENESS.**

A provision in the specifications to the effect that quarries from which the contractor proposed to take stone would be inspected by the architect, and that, if the deposit and the facilities for quarrying the same were satisfactory to the architect and the commissioner of parks, they would issue an approval of the same, is in no way illegal or beyond the power of the officers of the city to prescribe.

**5. SAME—BIDS—SELECTION OF MATERIAL.**

There were several bids submitted for the construction of the building, and one of the bidders bid for what is known as "South Dover Marble," $2,788,000, while another bid "Valley Quarry Dorset Marble," $2,865,706, which latter bid was accepted; and it appeared that at a meeting of the board of estimate and apportionment a report as to the qualities of the marble was made, and the architect expressed a preference for the Dorset Valley marble. *Held* that, there being nothing to show that the board had not acted in good faith, its action would not be disturbed.

**6. SAME—ACCEPTANCE OF BID—SELECTION OF QUARRY.**

A contention that the board of estimate and apportionment designated the quarry from which the marble should be taken, whereas by the terms of the contract the selection was left to the architect, was without merit; the form of the bid requiring that such a selection should be made, and the architects having examined all quarries, and reported themselves as satisfied with the Valley quarry.

**7. SAME—MATERIAL TO BE USED—BIDDER OWNING QUARRY.**

A contention that the quarry selected was the exclusive property of the successful bidder, and marble therefrom not obtainable in the open market, was without force; the specifications not requiring that marble from such quarry should be used, and the bid that was accepted being lower than that of any other who had the facilities for furnishing such character of marble.

**8. SAME—APPROPRIATION.**

The statute authorizing the construction not requiring an appropriation to be made before the execution of the contract for the work, an objection to a contract let by the board of estimate and apportionment on the ground that the amount to be paid the successful bidder was in excess of the appropriation made for the work was without merit.

**9. SAME—STATUTE—CONSTRUCTION—AWARD OF CONTRACT.**

An objection that no power was given by the statute to award any contract for the construction of the building was frivolous, the plain intention being that the contract should be executed with a bidder selected by the board of estimate and apportionment.

Appeal from special term, New York county.

Suit by William B. Bradley against Robert A. Van Wyck, mayor of the city of New York, impleaded with others. From an order denying a motion to continue a temporary injunction, plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

L. Laflin Kellogg, for appellant.

Theodore Connoly, for respondents.

INGRAHAM, J. The plaintiff, a taxpayer in the city of New York, brings this action to restrain the board of estimate and apportionment from accepting a bid for the construction of a public library, and the commissioner of parks from executing a contract therefor, and to restrain the comptroller of the city of New York

from taking any action under the selection of a bidder therefor, or paying out any money of said city under any selection, award, or contract therefor. The plaintiff applied for a temporary injunction restraining the acceptance of a bid or the execution of any contract. This motion was denied, and from the denial of the motion the .plaintiff appeals.

The bids were advertised for under the provisions of chapter 556 of the Laws of 1897, as amended by chapter 627 of the Laws of 1900. By that act provision is made for the erection of a building upon Bryant Park, in the city of New York, for a public library; and the department of public parks is authorized to erect, construct, maintain, equip, and furnish in said Bryant Park, or in or upon any portion thereof, a suitable and appropriate fireproof building, in accordance with plans to be made and prepared by the trustees of the New York Public Library, to be approved by the board of estimate and apportionment in the city of New York. The department of public parks is to prepare and submit to the board of estimate and apportionment forms of contracts, specifications, and bonds for the faithful performance of the work and the furnishing of the materials required, from time to time, to be approved by the corporation counsel for the city of New York as to form. When such contracts and specifications and the form of bond shall have been approved by the board of estimate and apportionment, the commissioners of public parks are to advertise for sealed bids or proposals for doing the work and furnishing the materials as called for by the contract. The bids are to be opened by the said commissioners, and to be submitted to the board of estimate and apportionment, which board were authorized to select such bid or bids, proposal or proposals, the acceptance of which would, in their judgment, best secure the efficient performance of the work. Acting under the authority conferred by this statute, the commissioner of public parks for the boroughs of Manhattan and Richmond prepared and submitted to the board of estimate and apportionment contracts and specifications and a bond for the performance of the work, which were approved by the corporation counsel. Such contracts and specifications and form of bond were then approved by the board of estimate and apportionment, and the commissioner of public parks for the boroughs of Manhattan and Richmond caused advertisements to be published for sealed bids or proposals for doing the work and furnishing the materials called for by the contract. Such bids were opened by said commissioner, and by him submitted to the board of estimate and apportionment, and such board thereupon selected a bidder. Thereupon this action was brought.

The counsel for the plaintiff makes 12 objections to the legality of the act of the board in selecting the bids. It is hardly necessary at this time to consider at length the several objections. A few observations upon the act itself and the evident intent of the legislature will be sufficient to dispose of most of them.

The act conferred upon the department of public parks in the city of New York authority to remove the .reservoir then occupy-

ing a portion of Bryant Park, and to erect, construct, maintain, equip, and furnish a suitable and appropriate fireproof building in accordance with plans to be made and prepared by the trustees of the New York Public Library. The administrative work of thus erecting the building was given to the department of parks, as then existing; and upon this department was imposed the duty of erecting the building, subject to the requirements of the second section of the act as to the method of advertising for bids, and the selection of the contractor who was to do the work. Subsequent to the passage of this act, and upon the 1st of January, 1898, the new charter of the city of New York (chapter 378, Laws 1897) went into effect. By that act a material change was made in relation to the department of parks. By section 607 of that act it is provided that the "head of the department of public parks shall be called the park board. Said board shall consist of three members who shall be known as commissioners of parks of the city of New York. * * * In appointing such commissioners, the mayor shall specify the borough or boroughs in which they are respectively to have administrative jurisdiction, to wit: One in the boroughs of Manhattan and Richmond; one in the borough of the Bronx, and one in the boroughs of Brooklyn and Queens." Section 610 prescribes the duties and powers of the park board. It is provided that the park board shall, by a vote of a majority of its members, have power to establish general rules and regulations for the administration of the department, which rules and regulations, as far as practicable, shall be uniform in all boroughs; power to appoint a secretary and such subordinate officers as may be necessary for the proper conduct of the office of the department, and to enact ordinances for the government and protection of all parks, parkways, squares, and public places within the city. By section 611 the power to appoint a landscape architect is given to the board. These seem to be all the powers given to the board as a whole, and it would seem to have been the intention of the legislature to confine the board to the legislative work in relation to the parks and the appointment of officers. The administrative work, which before was vested in the department of public parks as a whole, was by subsequent provision of the charter vested in the several commissioners appointed for the different boroughs. Thus, by section 612 of the charter it is provided that, subject to such rules and regulations as shall be established by the board, each commissioner shall have charge of the management and be responsible for the care of all such parks, parkways, squares, and public places as are situated in the borough or boroughs over which he has jurisdiction. It is further made the duty of each commissioner to maintain the beauty and utility of all such parks, and to institute and execute all measures for the improvement thereof for ornamental purposes and for the beneficial uses of the people. By section 613 it is made the duty of the commissioner of the boroughs of Manhattan and Richmond to maintain certain buildings mentioned in the parks in such boroughs, and such other "buildings as now are or may hereafter be erected in such parks or in any other park, square, or public place under his

jurisdiction under authority of the municipal assembly." It is further provided that it shall be the duty of the several commissioners to provide the necessary instruments, furniture, and equipments for the several buildings and institutions within their respective jurisdictions, and, with the authority of the municipal assembly, to develop and improve the same, and to erect additional buildings. By section 616 of the act it is provided that the "commissioner for the boroughs of Manhattan and Richmond shall in addition to the powers, rights and duties expressly conferred or imposed upon him by this act, possess and exercise all powers, rights and duties and shall be subject to all the obligations heretofore vested in, conferred upon or required of the corporation known as the mayor, aldermen and commonalty of the city of New York, or the department of parks in said city, or the commissioners of parks, or in any other board, body or officer therein or thereof, or in any commission, commissioner, body, board or officer in or for the county of Richmond, so far as such powers, rights, duties and obligations concern or affect the control, care, management, government, extension, maintenance or administrative jurisdiction of the parks, squares and other public places situated or lying within the boroughs of Manhattan or Richmond or either of them at the time this act takes effect or which thereafter may be opened or established therein, so far as the same are not inconsistent with this act." Under this provision it is quite clear that the administrative work relating to the parks in the boroughs of Manhattan and Richmond, including the erection of buildings in any of such parks, which theretofore had been vested in the department of parks of the city of New York, was imposed upon the commissioner for the boroughs of Manhattan and Richmond, and not upon the department of parks. The erection of this building was a duty imposed upon the department of parks under the act of 1897; and under the charter that duty was laid upon the park commissioner for the boroughs of Manhattan and Richmond; and with the performance of that duty the park board had nothing to do, except so far as it had power to make general rules and regulations which would include the performance of this duty by the commissioner for the boroughs of Manhattan and Richmond. It is quite clear, therefore, that it became the duty of the commissioner for the boroughs of Manhattan and Richmond to prepare the contract, and to cause the advertisements for bids to be inserted, to superintend the construction of the building, and to make and prepare certificates for the acceptance of the work of the contractor, and for the payment of the amount due under the contract, and also to receive all bids or proposals for doing the work. This disposes of the second, third, and ninth objections to the contract.

The first objection is that the proposals for bids were not published in the City Record and in two daily newspapers designated by the commissioners of public parks at least 15 days, consecutively, before the time fixed for the closing of the bids, as directed by the statute. Section 2 of the act provides that, when such contract and specifications and the form of the bond shall have been approved by the board of estimate and apportionment, the commis-

sioners of public parks shall advertise for sealed bids or proposals for doing the work, which advertisement shall be published in the City Record and in two daily newspapers to be designated by the said commissioners at least 15 days, consecutively, before the time fixed for the closing of the bids. It was alleged by the plaintiff that these advertisements were inserted in the City Record on the 24th of May, 1891, and published therein to and including June 13, 1891, excepting Sunday, May 26th, May 30th, a holiday, Sunday, June 2d, and Sunday, June 9th; but it also appeared that the City Record, being a journal published by the city of New York, was not published on Sundays or holidays. It may well be doubted whether this provision is mandatory; but, if it is, it certainly cannot be held to require a publication in an official journal on Sundays and holidays, when there was no issue of the journal. What was contemplated was that 15 days' notice should be given to bidders by the publication of such notice in the newspapers designated upon the days when such newspapers were usually published. The publication in the City Record was inserted in each issue of that newspaper for more than 15 days prior to the opening of the bids, and clearly was sufficient, within the statute. It appears that the commissioner of parks for the boroughs of Manhattan and Richmond designated the New York Times and the New York Daily News as the two newspapers published in New York in which the notice should be inserted. Such notice was published in these two newspapers daily, commencing on May 27th, until and including June 7, 1891. These newspapers were published daily, including Sunday, and the notice appeared in each daily publication of these newspapers, including Sunday. This, I think, was a compliance with the statute. These newspapers published a regular edition on Sundays and holidays. The statute requires that the notice should be published for 15 consecutive days, and contemplates, we think, a consecutive publication for 15 days in the regular issue of the paper as published; and, these newspapers being regularly published upon each Sunday and holiday, such notice was regularly published in the Sunday edition as well as in the week-day edition. The case of Voght v. City of Buffalo, 133 N. Y. 463, 31 N. E. 340, is not at all in conflict with this view, as that was based upon a finding that the Sunday edition that did not include the notice was published and sold under different terms from the week-day edition, and the fact that the publication was omitted there Sunday was not a failure to comply with the provision of the act that the notice should be published in five consecutive numbers of the official paper of the city. No such fact is shown here. The newspapers in which these notices were published had regular editions, and these notices were published daily; and a publication of these notices in each issue of the paper, including Sundays and holidays, was not a failure to comply with the provisions of the statute.

The fourth objection is that the specifications upon which the proposals and bids were based did not admit of full and free competition, and were unjust and unfair, in that they did not specify any particular kind of marble to be used in the construction of the build-

ing. There is nothing in the statute which prescribes that the contract or specifications shall specify the particular marble to be used. The specifications specify the quality of the marble to be used in the exterior work, and its color, chemical composition, and crushing strength, and provide that the general color and character of the marble should be similar to the character and color of the so-called "Drexel Building," at the southeast corner of Broad and Wall streets, New York City. It was further provided that the quarries from which the contractor proposes to take the stone will be inspected by the architects, and, if the deposit of material and the facilities for quarrying and handling the same are satisfactory to them and to the said commissioner, they will issue to the contractor a written approval of the same, with permission to deliver the material from such quarries, provided that it meets the requirements of this contract in all particulars. There is certainly nothing that is illegal in this provision, or that is beyond the power of the officers of the city to prescribe.

It seems that there were several bids submitted for doing the work. One of the bidders, who appears to have instigated this action, bid for what is known as "South Dover Marble," $2,788,000; while Norcross Bros., whose bid was accepted, bid "Valley Quarry Dorset Marble," $2,865,706. At the meeting of the board of estimate and apportionment a report as to the qualities of the marble specified in the several bids was made, and a statement made by one of the architects to the board. Although there is a dispute as to what was then said, the architect expressed a preference for Dorset Valley marble, and the board thereupon accepted the bid of Norcross Bros. There is absolutely nothing to show that this determination was not made in good faith, and considered by the officers in whom the statute had vested the power to select the bid as for the best interests of the city. The fact that an unsuccessful bidder considers that his bid should have been accepted is certainly no reason for the court to override the discretion vested in the board of estimate and apportionment. The allegation that the architect stated that the Drexel Building was built of Valley Quarry marble was denied by the architect. What was said was that Dorset marble was used, and that statement was true. The plaintiff also makes the objection that the board designated the quarry from which the marble should be taken, whereas by the terms of the contract the selection of the quarry was left to the architect. But the form of the bids required that such a selection should be made, and the architects have examined all the quarries, and reported that they were satisfied with the Valley quarry as fully equal to other Dorset quarries, and that the contractors had the facilities for obtaining sufficient marble for the building. Upon this report, the board was fully justified in accepting the bid. The objection that this quarry is the exclusive property of the successful bidder, and marble therefrom is not obtainable in the open market, is without force. The specifications did not require that marble from this quarry should be used, and the bid that was accepted was lower than that of any other bidder who had the facilities for furnishing Dorset marble.

This disposes of the fourth, fifth, sixth, seventh, and eighth objections to the contract.

The objection that the amount to be paid to the successful bidder is in excess of the appropriation for the work is equally without merit. There is no provision in the statute requiring an appropriation to be made before the contract is executed. What the board has done is to authorize the comptroller to issue bonds to an amount that will produce sufficient to pay for the building. The difference between the total amount of the bonds authorized and the amount of the contract will be furnished by the premium at which the bonds can be sold.

The objection that no power is given by the statute to award any contract is frivolous. The plain intention was that the contract should be executed with the bidder selected by the board of estimate and apportionment.

We have examined the other objections, but they are clearly without merit, and require no discussion.

It follows that the order appealed from is affirmed, with $10 costs and disbursements. All concur.