WILLIAMS et al. v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. April 19, 1907.)

MUNICIPAL CORPORATIONS—CONTRACTS—VALIDITY.

Under Revised New York City Charter, Laws 1901, p. 287, c. 466, § 692, the management and control of certain hospitals is vested in a board of trustees, to which board was transferred the powers previously vested in the department of public charities. Subdivision 9 of such section provides that the board of estimate and apportionment and the board of aldermen shall in each year appropriate such sum as may be necessary in their judgment for the support of the hospitals. Section 47 of said charter (Laws 1901, p. 25, c. 466) provides that the board of aldermen shall have power to provide by ordinance for constructing public buildings, but that no bonds or evidences of indebtedness shall be issued, unless the proposition for creating the debt be first approved by a majority of the board of estimate and apportionment. Section 419 (Laws 1901, p. 186, c. 466), provides that all contracts to be let for work done shall be made under regulations established by ordinance or by the board of aldermen, and shall be founded on sealed bids or proposals, and that, if the head of the department shall not deem it for the interests of the city to reject all bids, he shall, without the consent or approval of any other department, award the contract to the lowest bidder. Section 672 (Laws 1901, p. 275, c. 466), which governed the department of public charities, provided that the commissioner should have power, "provided an appropriation has been made therefor," to enlarge or alter the buildings. Section 674 provides that the commissioner shall incur no expense in excess of the amount appropriated therefor. Section 1541 (Laws 1901, p. 635, c. 466) provides that no expense shall be incurred in any department, unless an appropriation shall previously have been made covering such expense. The board of estimate and apportionment by resolution, and the board of aldermen by ordinance, provided for the issue of corporate stock, not exceeding $39,000, to provide means for the construction of a hospital dormitory; the bidders being advised that the appropriation was limited to such sum. All the bids were in excess of the appropriation, plaintiff's being the lowest, and the board of trustees passed a resolution that the board of estimate and apportionment and the board of aldermen be petitioned to approve and issue stock for an additional $14,000, and that plaintiff's bid be accepted, subject to the approval of the resolution requesting the additional appropriation; but the board of aldermen declined to approve the issue of the additional stock, whereupon the trustees informed plaintiff that his proposal was rejected and his security was returned. Subsequently the board of aldermen approved the additional appropriation. *Held,* that the subsequent appropriation did not relate back and validate the bid of plaintiff, and under the circumstances plaintiff had no right to have the contract awarded to him.

Appeal from Trial Term.

Action by John Williams and another against the city of New York. From a judgment dismissing the complaint, plaintiffs appeal. Affirmed.

Argued before PATTERSON, P. J., and INGRAHAM, CLARKE, HOUGHTON, and LAMBERT, JJ.

L. Laflin Kellogg and Kellogg & Rose (Alfred C. Pette, of counsel), for appellant.

Terence Farley and William B. Ellison, Corp. Counsel (Theodore Connoly, of counsel), for respondent.

CLARKE, J. The plaintiffs brought this action to recover damages for the refusal by the city to execute a contract claimed to have been

duly awarded to them; said damages consisting of the profits they would have made if they had been allowed to perform. By the provisions of section 692 of the revised charter of the city of New York (chapter 466, p. 284, of the Laws of 1901) the care, management, and control of Bellevue, Fordham, Harlem, Gouveneur, and the Emergency Hospitals were vested in a board of trustees, known as the "Board of Trustees of Bellevue and Allied Hospitals," and to said board was transferred the powers theretofore vested in the department of public charities of the city of New York, so far as concerned said hospitals. Subdivision 9 of said section provides:

"The board of estimate and apportionment and the board of aldermen shall in each year appropriate such sum as in their judgment may be necessary for the support and maintenance of said hospitals."

In the summer of 1902 the board of estimate and apportionment duly passed a resolution, and the board of aldermen an ordinance, providing for an issue of corporate stock to an amount not exceeding $39,000 for the purpose of providing means to pay for the construction of a dormitory in the Medical College Building for the employés of the board of trustees of Bellevue and Allied Hospitals. Thereafter the said board of trustees duly passed a resolution reciting the aforesaid action of the board of estimate and apportionment and authorizing the president of the board to prepare specifications and advertise for bids and specifications for the completion of this work. Pursuant to this resolution, a contract and specifications were prepared and proposals for bids or estimates were asked, which appeared in the newspapers of October 24, 1902. The proposed contract contained the resolutions of both the board of estimate and the board of trustees, and therefore the bidders were advised at the outset that the appropriation for the work for which their bids were invited was limited to the sum of $39,000. On the 6th day of November, 1902, the bids were opened, there being nine bidders, and an announcement was made that the plaintiffs were the lowest bidders. All of the bids were greatly in excess of the appropriation. Plaintiffs' bid amounted to $48,996. On November 7, 1902, as appears from the minutes of the board of trustees, the president reported the amounts of the various bids, and a resolution was adopted which recited that the board had twice advertised for bids and that the lowest of the proposals received were largely in excess of the sum appropriated by the city for this purpose and resolved:

"That the board of estimate and apportionment and the board of aldermen be petitioned to approve and issue city corporate stock for $14,000, the same being an additional appropriation for the purpose of converting the old medical college into a dormitory.

"Resolved, that the bid of Williams and Gerstle, Forty-Fourth street and First avenue, being the lowest of those received, be accepted, subject to the approval of the board of estimate and apportionment and the board of aldermen of the resolution requesting an additional appropriation of $14,000."

On the 7th of November, 1902, the board of estimate and apportionment adopted a resolution authorizing an additional appropriation of $14,000. Thereafter all of the other bidders were notified that, their bids not having been the lowest, the security deposited by them

would be returned, and the amount of said deposit was returned to all the other bidders. On the 21st of November, the secretary of the board of trustees wrote to the plaintiffs as follows:

"The board of aldermen, having declined to approve the issue of the additional corporate stock, upon which approval the acceptance of your proposal for work on the medical college building in Bellevue Hospital grounds was made conditional, I am directed to inform you that your proposal is hereby rejected, the present amount of the available appropriation for this work being insufficient."

And on the same day the board of trustees notified the comptroller that the security deposited by the plaintiffs should be returned. On the 24th day of November the security was returned to the plaintiffs by the comptroller. Thereafter the board of aldermen, on the 25th day of November, adopted an ordinance approving of the additional appropriation of $14,000, which ordinance was approved by the mayor on December 2, 1902.

The plaintiffs claim that, having been the lowest bidders, which fact was announced at the opening of the bids, they were entitled then and there to the award, or all of the bids should then and there have been rejected; that, inasmuch as all of the bids were not then and there rejected, it must be held that they were awarded the contract; that the condition in the formal award made to them by the board of trustees, subject to the additional appropriation by the board of estimate and the board of aldermen, did not have the effect of invalidating the award; that there was no necessity that the entire sum should have been appropriated at the time of the opening of the bids; and that the subsequent appropriation of the additional amount related back and validated their bid.

In considering these claims it becomes necessary to review the provisions of the charter governing the letting of public contracts. Section 47 of the charter provides that:

"The board of aldermen shall have power to provide by ordinance for * * * constructing public buildings * * * and * * * may create loans and authorize the issue of bonds, or other evidences of indebtedness, to pay for the same. * * * But no bonds or other evidences of indebtedness shall be issued under the authority of this section unless the proposition for creating such debt shall first be approved by a majority vote of the whole board of estimate and apportionment entered on the minutes of such board."

The resolution authorizing this appropriation upon its face stated that it was passed pursuant to the provisions of section 47, supra, and it was for the purpose of constructing a public building in conformity with said section, and not otherwise, that the board of aldermen authorized the issue of the corporate stock.

Section 419 of the charter provides that:

"All contracts to be made or let for work to be done or supplies to be furnished * * * shall be made by the appropriate * * * heads of departments under such regulations as shall be established by ordinance or resolution of the board of aldermen * * * and all contracts shall be entered into by the appropriate * * * heads of departments and shall * * * be founded on sealed bids or proposals made in compliance with public notices duly advertised. * * * If * * * the head of a department shall not deem it for the interests of the city to reject all bids, he shall, without the

consent or approval of any other department or officer of the city government, award the contract to the lowest bidder."

By section 692 of the charter, supra, we have seen that the board of trustees of Bellevue and Allied Hospitals, in regard to said hospitals, succeeded to all the rights, duties, and powers theretofore vested in the department of public charities.

Section 672 of the charter, governing the department of public charities, provided that:

"The commissioner, whenever the increase of inmates in or the proper care and government of the public institutions or establishments under his jurisdiction, shall in his judgment render it necessary or expedient, shall have power, provided an appropriation has been made therefor, to enlarge or alter the buildings occupied by such institutions or establishments or any of them and to make all needful repairs to buildings and property under this control."

Section 674 provides: .

" * * * The commissioner shall incur no expense for any purpose in excess of the amount appropriated therefor. * * * "

Section 1541 of the charter provides that:

"No expense shall be incurred by any of the departments, boards or officers thereof unless an appropriation shall have been previously made covering such expense, nor any expense in excess of the sum appropriated in accordance with law."

Section 1542 provides that:

"It shall be the duty of the heads of all departments and of all officers of said city and of all boards and officers charged with the duty of expending or incurring obligations payable out of the moneys raised by tax on said city or any of the counties contained within its territorial limit so to regulate such expenditures for any purpose or object that the same shall not in any one year exceed the amount appropriated by the board of estimate and apportionment for such purpose or object; and no charge, claim or liability shall exist or arise against said city * * * for any sum in excess of the amount appropriated for the several purposes."

In the scheme of government of the city of New York, developed after years of experience and continued legislation, in consideration of the large number of boards, bureaus, officers, and departments covering the diversified governmental interests of a great city, each with its special needs and constant demands for money, very great power has been lodged in the board of estimate and apportionment. It is the business of that board to receive from each of the administrative bodies having charge of a particular branch of the city government a statement of its needs and requirements, and, upon considering the demands of all, to apportion to each that amount which, in the judgment of the board, is required. It has been the policy of the city to raise the money required for permanent improvements by the issuance of corporate stock, rather than to pay for the same out of immediate taxation. For the issuance of the stock, action by the board of aldermen is necessary, based, however, upon a precedent resolution of the board of estimate and apportionment. It is so necessary to the proper management of this vast governmental machine that a central board should control the incurring of its financial obligations that the statutes

again and again require that no expense shall be incurred unless an appropriation shall have been previously made covering such expense, and that no charge, claim, or liability shall exist or arise for any sum in excess of the amount appropriated for the special purpose, and expressions of like import. If each department, if each board, if each officer, were at liberty to proceed according to his view of the necessities of his own peculiar work, the city would very speedily exceed its debt incurring capacity.

There is another section of the charter which illustrates the legislative intent to insure a precedent appropriation by the body charged with the control of the finances of the city before any of the administrative bodies can make a lawful contract. Section 149 provides that:

"No contract hereafter made, the expense of execution of which is not by law or ordinance in whole or in part to be paid by assessments upon the property benefited, shall be binding or of any force unless the comptroller shall endorse thereon his certificate that there remains therefor unexpended and unapplied as herein provided a balance of the appropriation or fund applicable thereto sufficient to pay the estimated expense of executing such contract as certified by the officer making the same."

It follows, therefore, that when, on the 6th day of November, 1902, the bids in the case at bar were opened, and it was discovered that the lowest of those bids was $9,996 larger than the amount which had been appropriated for the doing of the work advertised for, it was the duty of the board of trustees having the matter in charge to have rejected all of said bids, because upon no one of them could a valid contract with the city have been entered into. The opening of the bids, the ascertainment of the lowest one thereof, and the announcement of that fact did not constitute an award either in fact or in law; nor did the plaintiffs, as the lowest bidders, acquire by either or any of those facts any right to have a contract with them executed. If the bids had been within the appropriation previously authorized, the mere fact that they were announced to be the lowest bidders would have conferred upon them no such right; for, even under those circumstances, it would have been within the power of the board of trustees to have rejected all the bids. Nor did the action of the board of trustees, by its resolution adopted on the 7th day of November, confer any rights upon those plaintiffs. It resolved that the bid of the plaintiffs, being the lowest of those received, be accepted, subject to the approval of the board of estimate and apportionment and the board of aldermen of the resolution requesting an additional appropriation of $14,000. This was ultra vires the board of trustees. Section 419 of the charter provides that:

If "the head of a department shall not deem it for the interest of the city to reject all bids, he shall, without the consent or approval of any other department or officer of the city government, award the contract to the lowest bidder."

The board undertook to award this contract, conditioned upon the consent or approval of two other boards—that of estimate and apportionment and the aldermen. This in itself was in violation of the positive provisions of the statute. The board of trustees could not validate a bid in excess of the amount previously authorized. The bid

was invalid when made, and no subsequent action by that board or by any other board could breathe into it the breath of life. If the positive inhibition of the statute can be so evaded, if the city government should hereafter fall into the hands of careless or unscrupulous officials, an easy way would be provided for collusive bids under a small appropriation and a subsequent enlargement thereof in fraud of possible bidders and great loss to the city. The strict provisions of the consolidation act, re-enacted in the charter, were the outgrowth of the experiences of the city a little over a generation ago, when its finances were unblushingly and almost openly looted by a conspiracy between public officials and their favored contractors. What has once happened may be repeated. While in the case at bar there is no suggestion of fraud or impropriety, good motives in the particular case furnish no grounds for weakening the defenses against possible fraud. The conditional acceptance of the bid, therefore, conferred no rights upon the plaintiffs.

Before the additional appropriation, upon which the acceptance was conditioned, had been authorized, the board of trustees notified the plaintiffs that their bid had been rejected, and upon that notification the plaintiffs received back the amount of their deposit from the comptroller. This was on the 24th of November. After the final rejection of the bid and the receipt of the deposit, the board of aldermen passed the ordinance authorizing the additional appropriation, and it was approved by the mayor on the 2d day of December. Upon this record it is a fair inference that this action by the board of aldermen was purposely delayed until the final rejection of all the bids, in order that there might be no apparent obstacle in the way of a readvertisement upon the increased appropriation, with a fair opportunity to all bidders to avail themselves of the new conditions. We think that if the board of trustees had not notified the plaintiffs of the final rejection of their bid, and if they had not received back their deposit, still the approval of the ordinance would have had no effect upon this bid. Previous appropriation is essential to the validity of a contract for public work to be paid for by the public funds under the provisions of the charter.

The plaintiffs cite the cases of Lynch v. Mayor, 2 App. Div. 213, 37 N. Y. Supp. 798, and Pennell v. City, 17 App. Div. 455, 45 N. Y. Supp. 229. Those cases are authority for the proposition that when a bidder has been notified by the appropriate head of department that his bid is the lowest and has been accepted, and that a contract will be executed with him, his rights are fixed and a contract has been made with him to execute a contract, and upon refusal to execute the formal contract he has a right of action to recover as damages for such breach the amount of profit he would have made if the contract had been executed and performed by him. Neither of them, however, is an authority for the proposition that the head of a department has the right to make an award conditioned upon the act of some other board; nor was there in either of them the question of the want of a previous appropriation. On the contrary, in both cases the appropriation had been made.

Plaintiffs further cite Bradley v. Van Wyck, 65 App. Div. 293, 72 N. Y. Supp. 1034. In that case plaintiff, a taxpayer, brought an action to restrain the city authorities from accepting a bid. Among the objections the plaintiff raised was that the amount to be paid to the successful bidder was in excess of the appropriation for the work. This work was the erection of a public library building in Bryant Park, to be occupied by the New York Library, Astor, Tilden, and Lenox foundations, and was authorized and provided for by chapter 556, p. 832, of the Laws of 1897, as amended by chapter 627, p. 1375, of the Laws of 1900. In answer to this objection, Mr. Justice Ingraham pointed out that it was without merit, because there was no provision in the said statute requiring an appropriation to be made before the contract was executed. The provisions of law, therefore, governing that contract, were not the general provisions of the consolidation act or of the charter, but were those contained in the special legislation authorizing the work, and the case has no application here.

The plaintiffs also cite Van Dolsen v. Board of Education, 162 N. Y. 446, 56 N. E. 990; but in that case the plaintiff had actually performed under written contract with the board of school trustees of the Fourth Ward of the city of New York, acting for and on behalf of and for the benefit of the board of education. Section 1029 of the consolidation act (Laws 1882, p. 291, c. 17), in force at the time, provided that no contract should be made by the school officers of any ward until an appropriation should have been made by the board of education. The answer admitted that when the contract was made the defendant had ample funds for the payment thereof, and that said funds had been duly set aside by the proper authorities of the city of New York for the use of the defendant, and that the defendant had spent all of these funds before the plaintiff demanded payment. The court said:

"The defendant had the means and the discretionary power to make the appropriation, and it directed the work to be done and the appropriation to lie over until the cost should be ascertained. The board of trustees knew that the appropriation had not been made, but the plaintiff did not know it. * * * Defenses by official boards, resting upon their omission to do the acts they had the power to do in order to perfect the authority they assumed to exercise, are not favored, when invoked against parties dealing with them in good faith."

But in that case a written contract was entered into and the work was actually performed. In the case at bar no contract was entered into and no work was performed. In the Van Dolsen Case the school trustees were the agents of the board of education, and with its approval made the contract, and at the time it was so made the board had funds sufficient to pay therefor, which they spent in other ways. The defendant had no knowledge, and had no power to protect himself. He was an innocent party, who had duly performed upon a written contract. In the case at bar the plaintiffs come not within that category. The very contract upon which they bid contained the resolutions and ordinances which fixed the amount appropriated for the work at $39,000, and they agreed in writing in their bid that they had examined the contract, and in the face of that notification and with that knowledge they made their bid for nearly $10,000 in excess of the limit. The case cited does not apply. It follows that the plaintiffs

acquired no right to have the contract awarded to them, that the contract was not awarded to them, and that they have no cause of action by reason of the refusal of the city to execute the contract with them.

The judgment dismissing the complaint, therefore, should be affirmed, with costs. All concur.