(156 App. Div. 842.)

T. S. CLARKE CO. v. BOARD OF EDUCATION OF CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. May 29, 1913.)

1. SCHOOLS AND SCHOOL DISTRICTS (§ 80*)—CONTRACTS—ACCEPTANCE.

    Greater New York Charter (Laws 1901, c. 466) § 169, provides for the issuance of corporate stock by the board of estimate and apportionment for the construction of school buildings, to an amount not exceeding

$3,500,000 in any one calendar year, and for the issuance of a larger amount by the board of aldermen with the approval of the board of estimate and apportionment in accordance with section 47, providing that no bonds or other evidence of indebtedness shall be issued under the authority of this section unless the proposition for creating such debt shall first be approved by a majority vote of the whole board of estimate and apportionment. *Held*, that the board of education, which actually made the contract for the construction of the school building, could not enter into a valid contract by accepting a bid conditional upon an increased appropriation of corporate stock, for section 1541 inhibits any department from incurring expense unless an appropriation shall have previously been made, and therefore such an acceptance created no valid contract.

[Ed. Note.—For other cases, see Schools and School Districts, Cent. Dig. §§ 191–194;  Dec. Dig. § 80.*]

2. SCHOOLS AND SCHOOL DISTRICTS (§ 79*)—PUBLIC SCHOOLS—BOARD OF EDU-
CATION—POWERS OF.

Greater New York Charter (Laws 1901, c. 466) §§ 1059, 1061, respectively provide that the board of estimate and apportionment and the board of aldermen may raise and collect such revenue as may be necessary for the support of schools, that all moneys raised for educational purposes shall be raised in a special and general fund, the general fund consisting of all moneys raised for the payment of salaries of superintendents and the members of the supervisory and teaching staff, and the special fund embracing all moneys raised for educational purposes, not comprised in the general fund, the board of education having power to administer all moneys appropriated or available for educational purposes, and that there shall be a board of education, which shall have the management and control of the public schools subject only to the general statutes. Sections 96 and 108, respectively, provide that the board of education shall be one of the administrative departments of the city, and that the head of the department of education shall be called the "board of education." *Held*, that as the fund for the purchase of land and erection of schools does not come out of the general fund as it appears in the budget, but from the issuance of corporate stock, over which the board of estimate and apportionment and board of aldermen have control, the board of education has no authority to incur expense for the erection of a school building, no appropriation of corporate stock having been made, section 1541 providing that no expense shall be incurred by any of the departments, unless an appropriation shall have previously been made covering such expense, and hence a contract made before an appropriation is invalid.

[Ed. Note.—For other cases, see Schools and School Districts, Cent. Dig. §§ 188–191;  Dec. Dig. § 79.*]

Action by the T. S. Clarke Company against the Board of Education of the City of New York. The complaint was dismissed on trial, and the exceptions were ordered to be heard at the Appellate Division in the first instance. Exceptions overruled, and judgment entered upon the dismissal.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, DOWLING, and HOTCHKISS, JJ.

Edward M. Grout and Paul Grout, both of New York City (Edward M. Grout, of New York City, of counsel, and James F. McKinney, of New York City, on the brief), for plaintiff.

Archibald Watson, Corp. Counsel, of New York City (Terence Farley, of New York City, of counsel, and Francis Martin, of New York City, on the brief), for defendant.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

CLARKE, J. This is an action brought to recover $35,000 prospective profits of a contract alleged to have been made by the plaintiff with the defendant for the construction of School No. 92 at Park avenue and Grinnell avenue, borough of Queens, in the former town of Newtown.

On February 3, 1908, the board of education adopted a report of its committee on buildings requesting the board of estimate and apportionment to authorize the issue of corporate stock during the remainder of the year 1908 to the amount of $9,964,637 for the erection, equipment, and improvement of school buildings and premises, $3,500,000 of said amount to be issued immediately. The comptroller, in line with the policy, already established for the department of parks and other departments where requests were made for the issuance of corporate stock, to make appropriations for specific buildings, instead of appropriating the money in a lump sum, wrote to the board of education requesting it to furnish information as follows:

"Schedule A. Name and location of all school buildings now under construction, together with estimated cost of providing electric work, heating and ventilating apparatus, and furniture for each. Schedule B. Estimated amount of contract to be let for each of the new buildings and additions, plans and specifications for which are either completed or in an advanced stage. Schedule D. Location of lots in Brooklyn which it is proposed to improve, together with estimated expenditures for each."

In consequence thereof, the following resolution was adopted by the board of education:

"Whereas, the comptroller has recommended that this report be still further itemized: Therefore, be it resolved, that the board of estimate and apportionment be, and it is hereby, requested to return the said above-mentioned report, without action thereon."

It then adopted a resolution, proposed by the committee on buildings, giving the detailed information under the schedules as requested.

On April 1st the comptroller wrote:

"Concerning the request for an issue of corporate stock, etc., $2,164,704 of which amount has already been authorized for equipment, permit me to say that I am ready to recommend the authorization of $4,000,000 for the construction of elementary schools, if you will kindly furnish me with data showing the specific purposes for which it will be used."

The committee on buildings reported to the board of education:

"Your committee has selected as most urgent the school buildings on the subjoined list,"

which did not include the school in question and the board of education adopted the resolution:

"That the board of estimate and apportionment be and it is hereby respectfully requested to authorize the immediate issue of corporate stock to the amount of $4,107,075, the proceeds thereof to be used for the general construction of new elementary school buildings and additions, and necessary expenses in connection therewith, as above stated."

On the 22d of April a further report was made by the committee on buildings to the board of education, giving its reasons for postponing the proposed additional building for Public School No. 99 in

Brooklyn, and recommending a 48-classroom building at Park and Grinnell avenues, in the borough of Queens, and recommending that the resolution just before referred to be amended by striking out the said provision for school No. 99 and inserting in lieu thereof the following:

"92. Park and Grinnell avenues and Randall street, North Corona, 48 rooms, $182,000."

This was adopted by the board of education.

The board of estimate and apportionment on April 24, 1908, had presented to it by its secretary the resolutions of the board of education referred to, and after hearing the president of said board, and consideration having been had, adopted the following resolution:

"Resolved, that pursuant to the provisions of section 47 of the Greater New York Charter, as amended, the board of estimate and apportionment hereby approves of the issue of corporate stock of the city of New York to an amount not exceeding $4,607,075 to provide means for the construction and improvement of.public school buildings and additions thereto as follows."

Then follow detailed schedules, including the following:

"Borough of Queens. * * * Public School 92, Park and Grinnell avenues and Randall street, North Corona, 48 rooms, $182,000; * * * and when authority therefor shall have been obtained from the board of aldermen the comptroller be and is hereby authorized to issue corporate stock of the city of New York, in the manner provided by section 169 of the Greater New York Charter, to an extent not exceeding $4,607,075, the proceeds whereof to be applied to the purposes aforesaid."

The resolution was concurred in by the board of aldermen on April 26, 1908, and approved by the mayor on June 4, 1908. Plans for said school building were thereafter made and approved by the board of education, bids were invited, and on December 6, 1909, these bids were received and duly opened. There were 11 bids. The lowest was that of the plaintiff, the amount thereof being $281,000. On December 22, 1909, the committee on buildings reported to the board of education the bids made and stated:

"The committee on buildings has accepted the bid of the lowest bidder, and submits for adoption the following resolution: 'Resolved, that, subject to financial ability, the contract for the above-mentioned work be, and it is hereby, awarded to the lowest bidder, as follows: Borough of Queens, for the general construction, etc., of new Public School 92, T. A. Clarke Co., $281,000.' "

The report was approved and the resolution adopted by an unanimous vote. On December 8, 1909, the secretary of the board of education had written to the plaintiff:

"You are hereby notified that at a meeting of the committee on buildings held on December 6, 1909, the action of the chairman in accepting your bid or bids, as stated below, was approved and ratified, subject to approval of securities, execution of contract, and certification thereof by the comptroller under section 149 of the charter. * * * The acceptance of this bid is also subject to financial ability."

On April 15, 1910, the plaintiff wrote to the board of education, recounting the facts, and that it had offered and requested that the execution of the contract be completed, and that further delay would

cause damage, and it demanded that it be permitted to commence the actual work, and said:

"Your attention is called to the fact that this company has complied with all the conditions of said notice of acceptance, and that the acceptance of the bid, subject to the financial ability of the city, is not now, and has not been, a lawful condition, as certain public schools are now being erected, the contracts for which were advertised and let subsequent to the acceptance of our bid."

On December 15, 1910, the secretary of the board wrote:

"Referring to the award of contract made by the board of education on December 22, 1909, subject to financial ability, for the general construction of new Public School 92, Queens, I beg to advise you that at a meeting of the board of education held on December 14, 1910, a report and resolution was adopted to the effect that you be notified that there was not a sufficient appropriation for the building of said school, and that the conditional award, which was made upon condition that sufficient funds for the building of said school could be obtained, must be withdrawn, for the reason that there was no appropriation for that purpose."

[1] Upon these facts the plaintiff claims that its bid had been accepted, and that by the refusal of the board of education to execute the formal contract a cause of action had accrued to it for the recovery of its prospective profits. Section 1061 of the Charter (chapter 466, Laws 1901) provides as follows:

"There shall be in the city of New York, as constituted by this act, a board of education, which shall have the management and control of the public schools and of the public school system of the city, subject only to the general statutes of the state relating to public schools and public school instruction, and to the provisions of this act."

Section 1059 provides that the board of estimate and apportionment and the board of aldermen may raise and collect by tax such sum of money as may be necessary to provide for the conduct of the schools as called for by the budget adopted by the board of estimate and apportionment and the said board of aldermen pursuant to the provisions of this act. Section 1060 provides:

"All moneys raised for educational purposes in the city of New York shall be raised in two funds, to be known as the special school fund and the general school fund, respectively. The general school fund shall consist of all moneys raised for the payment of salaries of the city superintendent, associate city superintendents and district superintendents * * * and all members of the supervising and teaching staff, * * * in conformity with section 1091. * * * The special school fund shall contain and embrace all moneys raised for educational purposes not comprised in the general school fund. It shall be the duty of the board of estimate and apportionment and of the board of aldermen to indicate in the budget in raising the special school fund the respective amounts thereof which shall be available for use in the several boroughs. The general school fund shall be raised in bulk, and for the city at large. The board of education shall have power to administer and shall administer all moneys appropriated or available for educational purposes in the city of New York."

Section 169, which provides for the issuance of corporate stock, provides:

" * * * Such corporate stock may be authorized to be issued by the board of estimate and apportionment without the concurrence or approval of any other board or public body for the following purposes and within the

following limitations: * * * 9. For constructing and equipping school buildings and acquiring sites thereof to an amount not exceeding $3,500,000 in any one calendar year. * * * Corporate stock to be issued for purposes other than those hereinbefore in this section specifically enumerated, or for such purposes in excess of the amounts therein specified, shall be authorized by the board of aldermen with the approval of the board of estimate and apportionment as provided by section 47 of this act,"  .

which provides for the board of aldermen having power—

"to provide by ordinance * *. * for acquiring, or constructing public buildings, including school houses and sites thereof for the use of the city; * * * but no bonds or other evidences of indebtedness shall be issued under the authority of this section, unless the proposition for creating such debt, shall first be approved by a majority vote of the whole board of estimate and apportionment, entered on the minutes of record of such board."

I am of the opinion:

First. That there was no acceptance of this bid. It was a conditional acceptance, which the board had no right to make under the doctrine of Williams v. City of New York, 118 App. Div. 756, 104 N. Y. Supp. 14, affirmed 192 N. Y. 541, 84 N. E. 1123, because it exceeded the amount which had been appropriated by the board of estimate and apportionment and the board of aldermen.

[2] Second. That the attempt to justify the cause of action upon the ground of the absolute control of its funds by the board of education must fail. The amount expended for purchase of land and erection of schools does not come out of the general fund, which is appropriated to the payment of teachers, appears in the budget, and is raised by taxation, nor, strictly speaking, out of the special fund, but from the issuance of corporate stock, which is provided for by specific provisions of the charter. It has already been determined that, while the board of estimate and apportionment and the board of aldermen have no control over the salaries of the teaching staff, said boards have the power to fix the salaries of all other civilian employés of the board of education. Hogan v. Board of Education, 200 N. Y. 370, 93 N. E. 951. The creation of the funded debt is governed by the provisions alluded to for the issuance of corporate stock, and is entirely under the control of the board of estimate up to $3,500,000, and of the board of estimate and the board of aldermen for sums in excess thereof. Discretion is therefore vested in such bodies. It is an unsound contention, as it seems to me, that if there is such discretion, which may be exercised by the total denial of the request of the board of education, there is not included as a necessary part thereof discretion as to the purposes and objects for which such stock shall be issued. Said boards represent the whole city and all its interests. If the whole city is to be bonded, said boards must certainly have the power to limit the various purposes for which such bonds, or, as now called, corporate stock, are to be issued. The board of education, to obtain the appropriation, conformed to the request of the board of estimate and made a specific request for specific purposes. Those specific requests were granted. The board of education is bound thereby. Non constat they would have been granted and the corporate stock authorized otherwise. The board of education, which has no control, other than

by initiation, of the creation of this funded debt, must respect the limitations put thereon by the boards vested with power and discretion.

The board of education, while a corporation, is also one of the administrative departments. Sections 96, 108. Therefore the provisions of section 1541 apply:

"No expense shall be incurred by any of the departments, boards or officers thereof, unless an appropriation shall have been previously made covering such expense, nor any expense in excess of the sum appropriated in accordance with law."

The dismissal of the complaint, therefore, was proper, the exceptions should be overruled, and judgment entered upon the dismissal, with costs to the defendant. All concur.