THE PEOPLE OF THE STATE OF NEW YORK ex rel. RANGELEY CONSTRUCTION COMPANY, INC., Respondent, v. CHARLES L. CRAIG, as Comptroller of the City of New York, and DAVID E. KEMLO, as Chief Auditor of the Finance Department of the City of New York, Appellants.

First Department, July 1, 1921.

**Municipal corporations — city of New York — mandamus to compel payment of amount due under contract for constructing building for College of City of New York — mayor necessary party defendant — writ will not issue to compel comptroller to pay vouchers where contract not made in manner prescribed by statute.**

The mayor of the city of New York is a necessary party defendant in mandamus proceedings to compel the audit and payment of vouchers representing the amount alleged to be due relator under a contract with the trustees of the College of the City of New York for services and materials furnished in constructing a building for said college, since section 149 of the Greater New York charter requires warrants to be countersigned by the mayor.

The writ of mandamus was properly denied since the contract was not let to the relator in compliance with chapter 168 of the Laws of 1895, Education Law, section 875, and section 419 of the Greater New York charter which requires the advertising for bids, and section 149 of said charter requiring the comptroller to indorse on the contract his certificate to the effect that there remains unexpended and unapplied a balance of the appropriation or fund applicable to the payment of the contract in question, sufficient to pay the estimated expense of executing the contract, and of section 1541 of the Greater New York charter requiring an appropriation prior to the incurring of the expense by any of the departments, boards or officers of the city.

The relator was not entitled to payment by virtue of section 1132 of the Greater New York charter in reference to the expenditure of money received by the College of the City of New York in conducting special

**504** PEOPLE EX REL. RANGELEY CONST. CO., INC., *v.* CRAIG.

*First Department, July, 1921.* [Vol. 197

courses of study in vocational subjects, for under that section the money so received must be expended in defraying the expense incident to gratuitous instruction in said courses.

Section 1131 of said charter granting authority to the trustees of said college to receive and administer gifts of money and buildings did not authorize the trustees to bind the city by a contract involving expenditure or liability.

APPEAL by the defendants, Charles L. Craig and another, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 23d day of March, 1921, granting relator's application for a writ of peremptory mandamus.

*Willard S. Allen* of counsel [*John F. O'Brien, Arthur J. W. Hilly* and *James P. O'Connor* with him on the brief; *John P. O'Brien, Corporation Counsel*], for the appellants.

*Herbert A. Wolff* of counsel [*Edward S. Greenbaum* with him on the brief; *Greenbaum, Wolff & Ernst,* attorneys], for the respondent.

*Moses J. Stroock* [*George L. Cohen* of counsel], for the Board of Trustees of College of the City of New York, as *amicus curiæ.*

DOWLING, J.:

On November 13, 1918, the Rangeley Construction Company, Inc., the relator, and the College of the City of New York entered into a written agreement for the construction of a three-story temporary barracks. This contract provided that the relator was to receive the actual net cost of the work, plus seven per cent of said cost, which total would not exceed the sum of $87,472.50. Relator commenced work thereunder. This work was undertaken by the City College during the World War, at the request of the War Department of the United States in order to have a temporary barracks to house the Student Army Training Corps which the City College was operating at the request of the War Department. The construction was financed through an advance of $50,000 made by the trustees of the City College in their individual capacity as patriotic citizens, because no funds of the city of New York were available for said construction. Subsequently the Federal government from time to time paid to the trustees for the

said construction on the presentation of vouchers which were duly audited by the War Department, showing actual disbursements therefor.   When the armistice bringing to a close the World War was signed, the War Department ordered the construction to cease, and at the request of the City College, relator ceased work on the contract, and was paid in full for services and materials supplied up to that time.   On January 5, 1920, relator and the City College entered into a second written agreement, which among other things called for the roofing over of the first-story walls and using the footings and materials salvaged under the former contract, which construction when finished would make a permanent one-story building harmonizing with the other buildings of the City College.   In this second agreement it was recited that the trustees of City College acted within the provisions of section 1132 of the Greater New York charter which provides for the administration by the trustees of said college of a special fund comprising student fees collected by the City College in furnishing and conducting special courses and courses of study in vocational subjects and civic administration, non-matriculated student privileges and other special educational advantages. This new building as is stated in said contract was to be known as a " vocational building."   The prior contract was referred to and the work was undertaken on the same basis, viz., relator was to receive the actual net cost of the work, plus seven per cent of said cost, which total was not to exceed the sum of $32,100.

Thereafter the relator commenced the performance of the work under the terms of the contract of January 5, 1920, and has fully complied with all the terms and conditions thereof on its part to be performed and continued to furnish materials and performed work under said contract until on or about September 1, 1920.

On May 8, 1920, the relator, pursuant to the terms and conditions of the contract of January 5, 1920, submitted to the College of the City of New York a voucher in the sum of $1,249.85, and on June 15, 1920, submitted a voucher in the sum of $7,529.86, and on August 27, 1920, submitted a voucher in the sum of $5,160.08, all of which vouchers were approved and certified for payment by the College of the

City of New York, and which vouchers were submitted by the College of the City of New York to the chief auditor of the finance department of the city of New York for audit and to the comptroller of the city of New York for payment, out of the special fund pursuant to section 1132 of the Greater New York charter designated as Code S-762. Audit and payment of said vouchers has been refused. The relator has not been paid anything for the work done, materials delivered at and incorporated in the building and labor performed under the terms of the agreement of January 2, 1920, although it has actually disbursed about $15,000 for labor and materials and in all respects has complied with the terms and conditions of the two contracts and has submitted properly approved vouchers and certificates for such payments.

After audit and payment was refused by the appellants, this proceeding was brought for an order directing that a peremptory (or else an alternative) writ of mandamus issue requiring the appellants to audit and pay the aforesaid vouchers. This order was granted and from it the present appeal is taken.

At the outset objection is made that the mayor of the city of New York is a necessary party defendant. This objection is well taken, for as was said by Mr. Justice THOMAS in *People ex rel. McClinchie* v. *Prendergast* (140 App. Div. 237): "Section 149 of the Greater New York charter (as amd. by Laws of 1901, chap. 466, and Laws of 1904, chap. 247; since amd. Laws of 1910, chap. 545) requires that 'All payments by or on behalf of the corporation, except as otherwise specially provided, shall be made through the proper disbursing officer of the department of finance, on vouchers to be filed in said department, by means of warrants drawn on the chamberlain by the comptroller, and countersigned by the mayor.' The petitioner is entitled to the money, but as the mayor has not been made a party, the order must be modified so as to deny the writ for the payment of the money, * * *." But even if the mayor had been made a party defendant herein, the relator would not have been entitled to the mandamus sought.

Chapter 168 of the Laws of 1895 provides as follows:

"Section 1. The board of trustees of the College of the City of New York is hereby authorized and empowered to select and acquire, in the name, and on behalf of the mayor,

aldermen and commonalty of the city of New York, a site for a new building or buildings for the uses and purposes of said college. Such site shall be within the boundaries of the city of New York."

" § 6. * * * The said board of trustees is hereby also authorized from time to time thereafter, to build and construct upon said site such other building or buildings for the uses and purposes of said college as said board of trustees shall deem necessary or requisite and as shall be approved by the said board of estimate and apportionment. Such buildings shall be built and constructed upon plans and specifications therefor to be adopted and approved by said board of trustees. And the said building shall be built by contract entered into by said board of trustees after advertisement for proposals therefor. All the provisions of law and ordinance and of the rules and regulations of the board of education of the city of New York relative to advertising for and receiving proposals and entering into contracts for the building of public schools in the city of New York shall be and are hereby made applicable to the awarding of and entering into the contract or contracts for the building and construction of said buildings and each of them. And the cost of such buildings and of each of them shall be provided for and shall be paid for out of the proceeds of bonds of the city of New York, which shall be issued and sold in the manner hereinbefore prescribed for the issuing and sale of bonds to pay for the said site."

Under this statute, the provisions of chapter 786 of the Laws of 1917 (adding to Education Law § 875, subd. 8) and of section 419 of the Greater New York charter, applicable to the board of education, in relation to the construction of buildings, are also applicable to the College of the City of New York.

Subdivision 8 of section 875 of the Education Law, as added by chapter 786 of the Laws of 1917, provides as follows: " No contract for the purchase of supplies, furniture, equipment, or for the construction or the alteration or remodelling of any building shall be entered into by a board of education involving an expenditure or liability of more than one thousand dollars unless said board shall have duly

508 People ex rel. Rangeley Const. Co., Inc., *v.* Craig.

First Department, July, 1921. [Vol. 197

advertised for estimates for the same and the contract in each case shall be awarded to the lowest responsible bidder furnishing the security as required by such board."

The material portion of section 419 of the Greater New York charter (Laws of 1901, chap. 466, as amd. by Laws of 1910, chap. 554) provides as follows:

" § 419. * * * Whenever any work is necessary to be done to complete or perfect a particular job, or any supply is needful for any particular purpose, which work and job is to be undertaken or supply furnished for the city of New York, and the several parts of the said work or supplies shall, together, involve the expenditure of more than one thousand dollars, the same shall be by contract, * * * and shall * * * be founded on sealed bids or proposals, made in compliance with public notices, duly advertised in the City Record, and the corporation newspapers, and said notice to be published at least ten days; * * *."

In other words, all contracts involving an expenditure of more than $1,000 can only legally be entered into after public notice and letting.

Section 149 of the Greater New York charter (as amd. by Laws of 1917, chap. 401) also provides, in part, as follows:

" § 149. * * * No contract hereafter made, the expense of the execution of which is not by law or ordinance, in whole or in part, to be paid by assessments upon the property benefited, shall be binding or of any force, unless the comptroller shall indorse thereon his certificate that there remains unexpended and unapplied, as herein provided, a balance of the appropriation or fund applicable thereto, sufficient to pay the estimated expense of executing such contract, as certified by the officer making the same, * * *."

Section 1541 of the Greater New York charter (as amd. by Laws of 1910, chap. 543) also provides, in part, as follows:

" § 1541. * * * No expense shall be incurred by any of the departments, boards or officers thereof, unless an appropriation shall have been previously made covering such expense, nor any expense in excess of the sum appropriated in accordance with law."

The importance of a rigid enforcement of these provisions for the protection of the city's interests was pointed out by

the present presiding justice of this court in *Williams* v. *City of New York* (118 App. Div. 756; affd., 192 N. Y. 541) and *Clarke Co.* v. *Board of Education* (156 App. Div. 842; affd., 215 N. Y. 646).

Concededly the relator has not brought itself within any of the provisions of law heretofore quoted. But it contends that it is entitled to payment of its vouchers under section 1132 of the Greater New York charter (as amd. by Laws of 1916, chap. 580) which provides as follows: " The trustees may also, upon such terms and conditions as to admission and attendance as they may prescribe, furnish gratuitously or otherwise, for male and female students actual residents or employees of said city, special courses and courses of study in vocational subjects and civic administration, and other educational advantages, including the admission of nonmatriculated students, within the college buildings or elsewhere; and may grant appropriate certificates and vocational diplomas and degrees to such students as shall have completed the courses or studies so prescribed. All sums of money, if any, received by said college, as provided by this section, shall be accounted for and paid into the city treasury, and shall at once be appropriated by the board of estimate and apportionment to a special fund to be administered by the trustees of the College of the City of New York in furnishing and conducting the said special courses and courses of study in vocational subjects and civic administration, nonmatriculated student privileges and other special education advantages."

It seems clear that this section refers only to the subject-matter at its head, viz., " Instruction to be furnished gratuitously and otherwise by College of the City of New York; degrees and diplomas," and has no application to the construction of buildings. It deals with furnishing and conducting special courses of study, wherein the fees received from those who pay for tuition shall be used to defray the cost of the tuition of those who receive gratuitous instruction. It would be an unreasonable and unwarranted construction of the plain language of this section to hold that it placed in the hands of the trustees of the college a power to enter into contracts for building operations without the usual safeguards imposed by the charter itself. Nor does certain language of

section 1131 of the Greater New York charter (as amd. by Laws of 1918, chap. 583) confer any further right upon the trustees to bind the city to contracts not entered into pursuant to the provisions of the charter. Section 1131, so far as material, reads: " The board of trustees shall follow the procedure prescribed for the board of education in chapter seven hundred and eighty-six of the laws of nineteen hundred and seventeen in the purchase and sale of real property, though nothing in this title shall be construed as a bar to the independent acceptance and administration for the college of gifts of land, money and buildings from private sources by the trustees, or officers of the college." This confers upon the trustees the right only to accept and administer gifts of land, money and buildings from private sources and not to bind the city by contracts involving expenditure or liability.

The order appealed from will, therefore, be reversed, with ten dollars costs and disbursements, and the motion denied, with fifty dollars costs.

CLARKE, P. J., LAUGHLIN and MERRELL, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and motion denied, with fifty dollars costs.