In the Matter of the Application of SAMUEL CARLSON and Another, Copartners, Doing Business under the Firm Name and Style of CARLSON & BARGER, Respondents, for a Peremptory Order of Mandamus against CHARLES L. CRAIG, as Comptroller of the City of New York, Appellant.

First Department, December 4, 1925.

Municipal corporations — application for peremptory mandamus to compel comptroller of city of New York under Greater New York charter, § 149, to certify sufficiency of funds to pay amount due under contract made by commissioner of plant and structures with plaintiffs — contract is for purchase of equipment and real property of street railway — comptroller contends that property belongs to city through forfeiture of franchises, and also that city has no power to purchase — clear legal right not shown — peremptory order denied — alternative order granted.

The petitioners are not entitled to a peremptory mandamus order to compel the comptroller of the city of New York to certify under section 149 of the Greater New York charter to sufficiency of funds to pay the amount due under a contract entered into between the plaintiffs and the commissioner of plant and structures, pursuant to resolutions by the board of aldermen and by the board of estimate and apportionment, since it appears that the contract is for the purchase of the equipment of the plaintiffs, including the tracks, wires and poles and certain bridges and real property, for the comptroller contends that the property belonged to the city of New York at the time the contract was made by virtue of a forfeiture of the franchises granted by the city to the plaintiffs' predecessor, and that furthermore, the city does not have the right to purchase a street railroad for the purpose of operation.

The contention of the comptroller and the facts presented show that the petitioners have not a clear legal right, and, therefore, a peremptory order of mandamus should not be granted, but an alternative order of mandamus is granted.

APPEAL by the defendant, Charles L. Craig, as comptroller of the city of New York, from a peremptory order of mandamus, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 29th day of June, 1925, requiring the comptroller of the city of New York to annex his certificate of sufficiency of funds to an alleged contract.

*Charles L. Craig*, in person, as comptroller of the city of New York, appellant.

*James H. Hickey*, for the respondents.

MARTIN, J. By the terms of section 149 of the Greater New York charter (Laws of 1901, chap. 466, as amd. by Laws of 1923, chap. 667) it is provided as follows: " No contract hereafter made, the expense of the execution of which is not by law or ordinance, in

whole or in part, to be paid by assessments upon the property benefited, shall be binding or of any force, unless the comptroller shall indorse thereon his certificate that there remains unexpended and unapplied, as herein provided, a balance of the appropriation or fund applicable thereto, sufficient to pay the estimated expense of executing such contract, as certified by the officer making the same   *   *   *.

" It shall be the duty of the comptroller to make such indorsement upon every such contract so presented to him, if there remains unapplied and unexpended such amount so specified by the officer making the contract, and to thereafter hold and retain such sum to pay the expense incurred until the said contract shall be fully performed. And such indorsement shall be sufficient evidence of such appropriation or fund in any action.   *   *   *."

The comptroller has refused to make a certificate in accordance with the section quoted, upon the ground that the proceedings leading up to the authorization of the contract, as well as the authorization thereof, are *ultra vires* and void.

The contract sought to be made provides:

" *Witnesseth:* 1. The said vendor agrees to sell to the said purchaser, free from all taxes, liens and encumbrances of every kind and nature whatsoever and with full warranty of title and right to convey, and the said vendee hereby agrees to purchase at the sum of Seventeen Thousand six hundred fifty ($17,650) Dollars, all the following property, to wit:

" All the railroad equipment constructed in the right-of-way on the franchise routes in the City of New York formerly owned by the New York and North Shore Traction Company, including rails, ties, ballast, trolley poles, suspension and contact wires, switches, frogs and section and other insulators, track switches, frogs, special work, joints and bonding, feeder cables and cable hangers, insulators and switches, line signals, bell-hangers or suspensions, culverts and the following bridges, viz:

" A fixed span railroad bridge over the Long Island Railroad at Bayside.

" A movable span railroad bridge over Alley Creek, Douglaston, including foundations, abutments, superstructures, girders and approaches;

" Upon certain parcels of land also formerly belonging to or leased by the New York and North Shore Traction Company, said parcels being

" (a) The land within the lines of 34th Avenue (Chestnut Street) between 149th Street (Flushing Place) and Murray Lane, Flushing, County of Queens, New York City;

" (b) The land within the lines of 221st Street as proposed (Bayside Boulevard-10th Avenue) between 41st and 42nd Avenues, County of Queens, City of New York.

" (c) The land within the lines of Northern Boulevard (Broadway-Jackson Avenue) easterly and westerly of Alley Creek, County of Queens, City of New York.

" (d) The land in Central (Ziegler) Avenue between Chestnut Street and Bayside Avenue, Flushing, Queens County, City of New York.

" (e) The land in Central (Ziegler) Avenue between Bayside Avenue and Higgins Lane, Flushing, Queens County, City of New York.

" 2. And it is further mutually agreed that the said purchase shall be completed on the 23d day of December, 1924, at 11 o'clock in the forenoon of that day or on such earlier or other day as may be agreed upon, at the office of the Commissioner of Plant and Structures of the City of New York.

" 3. It is mutually understood and agreed that on the payment of the purchase price herein named, the possession of said railroad equipment shall be given to the said Commissioner, and a bill of sale containing a warranty of title and covenant as to the vendor's right to convey shall be delivered to the said Commissioner duly executed, and that said bill of sale and execution thereof, before acceptance, must be approved by the Corporation Counsel."

The comptroller asserts that by this contract the city is about to buy and pay for its own property; that those attempting to sell it have no title; that the city of New York is without power to purchase the property and may not in any event purchase a street railway for operation.

The board of estimate and apportionment on the 27th day of October, 1924, preparatory to authorizing the contract, adopted the following resolution:

" *Resolved,* by the Board of Estimate and Apportionment, that pursuant to the provisions of Section 189 of the Greater New York Charter,* the Comptroller be and hereby is authorized to issue tax notes of the City of New York in an amount not exceeding Fifty Thousand ($50,000) Dollars, which shall be included in annual tax levies in the manner provided by said section 189 of the Charter, the proceeds of which, to the amount of the par value thereof, to be used for the acquisition of the property formerly held by the New York and North Shore Traction Company, in

---

*Added by Laws of 1911, chap. 224, as amd. by Laws of 1920, chap. 713.— [REP.

the Borough of Queens, under the jurisdiction of the Department of Plant and Structures, the property in question to be purchased by whomsoever the Corporation Counsel advises is the proper official to do so."

Thereafter and on the 28th day of October, 1924, the board of aldermen authorized the commissioner of plant and structures to prepare and enter into the contract.

On the 17th day of November, 1924, the board of estimate adopted a second resolution as follows:

"*Resolved*, That the Commissioner of Plant and Structures of The City of New York be, and he hereby is authorized to enter into a contract for the purchase of said equipment constructed on said five parcels of land aforementioned which were formerly owned and operated by the New York and North Shore Traction Company, including the ties, rails, poles and wires and other equipment of said company, for a sum not exceeding Seventeen Thousand six hundred and fifty dollars ($17,650) subject to the approval of this Board; and it is further

"*Resolved*, in the event that the Commissioner of Plant and Structures cannot close any such contract with the owner of such equipment, rails, etc., that he be and hereby is authorized to bid on any such property at any public sale thereof a price not to exceed the sum of seventeen thousand six hundred and fifty dollars ($17,650); and it is further

"*Resolved*, that a sufficient sum from the proceeds of the aforementioned tax notes, not exceeding seventeen thousand six hundred and fifty dollars ($17,650) be transferred forthwith to the said Commissioner of Plant and Structures for the purpose of such purchase, and it is further

"*Resolved*, that this property be purchased by the Commissioner of Plant and Structures free from all taxes, liens and encumbrances of every nature whatsoever."

The petitioners allege that they are the owners of all the railroad equipment constructed on routes in the city of New York formerly owned by the New York and North Shore Traction Company; that on December twenty-third, pursuant to the resolution of the board of aldermen dated October 28, 1924, and the resolution of the board of estimate dated the 17th of November, 1924, they entered into a contract with the commissioner of plant and structures by which they agreed to sell all of said property for the sum of $17,650; that the board of estimate appropriated $50,000 to be used for the purchase of the property which was formerly owned by the New York and North Shore Traction Company, of which the above described property is a part; that although no part

of the above appropriation has been expended, the comptroller has refused to certify that funds are available to meet the city's obligations under such contract.

The answer of the comptroller denied the allegations of ownership and further denied that any action has been taken to authorize the appropriation, except that a majority of the members of the board of estimate on October 27, 1924, voted for the resolution, the validity of which is attacked.

The comptroller asserts that under date of February 1, 1909, of April 14, 1909, of June 27, 1911, of November 25, 1913, and of December 28, 1915, franchises were granted by the board of estimate and apportionment to the New York and North Shore Traction Company for a street surface railway on certain routes in the borough of Queens; that on January 28, 1921, after due notice and hearing, the board of estimate and apportionment duly adopted resolutions forfeiting the franchises granted as aforesaid; and that by reason of the forefeiture and also by reason of the abandonment by the railroad the property now sought to be sold became the property of the city of New York.

In several of the franchises so granted it is provided that:

" Upon the termination of this original contract, or if the same be renewed, then at the termination of the said renewal term, or upon the termination of the rights hereby granted for any cause, or upon the dissolution of the Company before such termination the tracks and equipments of the Company constructed pursuant to this contract within the streets, avenues and highways shall become the property of the City *without costs,* and the same may be used or disposed of by the City for any purpose whatsoever, or the same may be leased to any company or individual.

" If, however, at the termination of this grant as above, the City (by the Board) shall so order by resolution, the Company shall, upon thirty (30) days' notice from the Board, remove any and all of its tracks and other equipment constructed pursuant to this contract, and the said streets, avenues and highways shall be restored to their original condition at the sole cost and expense of the Company.   *   *   *

" In case of any violation or breach or failure to comply with any of the provisions herein contained, this contract may be forfeited by a suit brought by the Corporation Counsel, on notice of ten days to the Company, or at the option of the Board by resolution of said Board, which said resolution may contain a provision to the effect that the railway constructed and in use by virtue of this contract shall thereupon become the property of the City without proceedings at law or in equity."

Although the board of estimate and apportionment has attempted to authorize the contract referred to above, it appears that, by resolution adopted January 28, 1921, containing numerous recitals as to the history and provisions of the franchise contracts and the default of the New York and North Shore Traction Company, it was provided that the franchises should be forfeited, that the security given should be liquidated and the proceeds applied to the obligations of the company, and that " the tracks and equipment of the company, constructed pursuant to the said contract within the streets and avenues are herein and hereby declared to be the property of the city of New York without cost to be used or disposed of by said city for any purpose whatsoever, or to be leased to any company or individual."

The security deposited by said company was thereafter liquidated, leaving a balance due and owing to the city of New York of $15,898.34, with interest thereon, no part of which has been paid. In addition there seem to be property taxes as well as assessments against the property amounting on November 14, 1924, to $7,607.28, with interest and penalties.

At the time of the grant of the franchise of February 1, 1909, the city had title, for street purposes, with the exception of a certain portion designated as private property lying between Flushing place and Murray lane. Title to such latter property, for street purposes, was acquired on October 31, 1924, prior to the making of the contract relied upon by the petitioners.

It appears that the railroad equipment, rails, ties, trolley poles, wires, switches and other property, to which the petitioners assert title and for the purchase of which by the city it is alleged they are entitled to have a certification from the comptroller, so that they may receive payment therefor, were installed under the franchises referred to and subject to the provisions thereof; that the city had title for street purposes to some of such property at the time the tracks were so laid and has since acquired title for street purposes to the remainder; that the title subsequently acquired for street purposes was in part taken prior to the forfeiture of the franchise and in part acquired after the forfeiture of the franchises, but prior to the execution of the contract relied upon by the petitioners and part subsequent to the execution of the contract relied upon, but under proceedings instituted prior thereto.

In *Williams* v. *City of New York* (118 App. Div. 756; affd., 192 N. Y. 541) and *Clarke Co.* v. *Board of Education* (156 App. Div. 842; affd., 215 N. Y. 646) it was decided that if the comptroller is without funds he should not be compelled to certify that there are funds for the performance of a contract.

The comptroller contends there are no funds for the performance of this contract because the resolutions of the board of aldermen and the board of estimate and apportionment were invalid. He also argues that the board of estimate and apportionment and the board of aldermen attempted to buy material for the purpose of operating a local railroad which the municipality has no right to operate; that the property belonged to the city of New York for the additional reason that, when the railroad company abandoned its franchise and abandoned this material upon the right-of-way, everything remaining on the right-of-way became the property of the city of New York; and that the railroad had only an easement which it relinquished when it abandoned the operation of its line, no part of which has been in operation since January 28, 1921.

The comptroller has pointedly indicated the possible invalidity of the resolutions authorizing the purchase of abandoned trolley wires, trolley poles and rails which the city of New York may already own or which the city might have no authority to buy for the purpose of resuming operation of the trolley line.

The petitioners must show a clear legal right to a peremptory mandamus before the issuance thereof. In *Matter of Hamburger* v. *Board of Estimate* (109 App. Div. 427, 428) the court said: " Mandamus proceeds upon the theory of a clear legal right; it is to correct the neglect or refusal of an officer or board to do that which by law it is bound to do. . * * * If he has no power to act, the court will not compel him to do that which the law does not." (See *Matter of Eiss* v. *Summers*, 205 App. Div. 691, 696; *Matter of Haebler* v. *N. Y. Produce Exchange*, 149 N. Y. 414, 418; *People ex rel. Rand* v. *Craig*, 231 id. 216.)

The right to a peremptory order of mandamus being at least doubtful, the petitioners should have an alternative order. Upon the trial they may be able to establish their right to the relief demanded.

The order should be reversed and an alternative order of mandamus granted.

CLARKE, P. J., DOWLING, MERRELL and McAVOY, JJ., concur.

Order reversed and an alternative order of mandamus granted. Settle order on notice.