IRMA C. LOWE, Appellant, v. THE CITY OF NEW YORK, Respondent.

Second Department, March 23, 1934.

*Stephen Callaghan* [*Ralph Stout* with him on the brief], for the appellant.

*Alfred D. Jahr* [*Paul Windels, Corporation Counsel, Anson Getman* and *Paxton Blair* with him on the brief], for the respondent.

CARSWELL, J. The action is for specific performance. The complaint was dismissed after a trial. The instruments upon which plaintiff relied were held unenforcible as contracts for the purchase and sale of real property. Plaintiff appeals.

The facts are not contested. The dispute concerns the effect of documentary evidence, the interpretation of the terms thereof, and whether certain statutes are or are not applicable.

On December 14, 1931, two instruments were signed relating to the purchase and sale of two parcels of real estate in Brooklyn. They recite that the " Vendor " is Lowe (plaintiff) and that the " Vendee " is " The City of New York, by Charles W. Berry, the Comptroller thereof, acting in its behalf, pursuant to the authority contained in a Resolution of the Board of Estimate and Apportionment adopted the 20th day of November, 1931." Each instrument was signed by the plaintiff, Lowe, and by " C. W. Berry, as Comptroller of The City of New York." Each states that the purchase price is $13,500. Neither has a certificate of the comptroller certifying to an appropriation available for the purposes thereof. It is asserted that there is no evidence that such appropriations were made.

A resolution of the board of estimate and apportionment of November 20, 1931, recites the history of the proposal to acquire these parcels as a site for a hospital, the decision to do so having been made on June 12, 1931. It sets out a description of the parcels;

that the comptroller obtained an option for the two parcels for $27,000, expiring on December 29, 1931; facts from him justifying his recommendation of purchase at that price in the public interest; and an approval of the purchase as recommended by the comptroller, reading: " Resolved, that the Board of Estimate and Apportionment, pursuant to the provisions of sections 1433 and 1434 of the Greater New York Charter as amended, and to its resolution, adopted June 12, 1931, * * * approves of the purchase of the following described premises." It fixes the price for each parcel at $13,500 (total, $27,000), immediately preceding which appears: " Resolved, that *the Comptroller is hereby authorized to purchase the above described premises,* subject to existing party walls, at private sale *for amounts not to exceed the sums hereinafter set down as the purchase price.*" This resolution was adopted without a dissenting vote.

On June 2, 1931, the board of aldermen adopted an ordinance selecting this site. The board of estimate and apportionment, on June 12, 1931, adopted a resolution concurring in the ordinance and authorizing and directing the corporation counsel to institute condemnation proceedings to acquire the site pursuant to section 1435 of the charter. This resolution also provided that title was to vest upon the confirmation of the awards, or at such earlier date as the board " by resolution hereafter determine." The resolution also provided that it was not to be construed so as to prevent the comptroller from entering into contracts for the purchase of the property at private sale, subject to the approval of the board, and the comptroller was authorized to so proceed. Pursuant to this authority the comptroller negotiated, made his recommendation, and the resolution of November 20, 1931, eventuated, approving the purchase of the two parcels by the board itself; the contract to be signed by the comptroller.

If this real property had been acquired in condemnation proceedings pursuant to section 1435, the financing thereof would have been pursuant to section 169, subdivision 8, of the charter. There is ordinarily no reference to an appropriation in a resolution to acquire real property by proceedings in condemnation, nor does any seem to be required. Subdivision 8 provides for the payment of awards and the expense of the acquisition of lands for public purposes, and authorizes the comptroller to issue corporate stock and serial bonds therefor. If that method had been pursued, there would have been no need for an appropriation. Our attention has not been called to any pertinent statute which militates against this view.

The board, however, in the public interest, adopted an alter-

native method expressly authorized by sections 1433 and 1434, and, like section 1435, contained in the charter chapter respecting proceedings instituted for the acquisition of real property for a public use.

Section 1434 reads: " Said board * * * shall have power and is hereby authorized to agree as to the purchase price of any real property * * * and to purchase the same for and on behalf of said city of New York."

Sections 1433 and 1434 are specifically invoked in the resolution of November 20, 1931, and recourse to that method of acquisition is also authorized in the resolution of June 12, 1931, which also authorized acquisition by condemnation under section 1435. Resort to this alternative method of acquisition in lieu of condemnation proceedings did not change the method of financing. The project was subject to the same provisions as would have applied if condemnation proceedings had been instituted and carried through. Therefore, no further appropriation was needful to validate the purchase by the board, acting on behalf of the city, than would have been needful in the event the resolutions had been effectuated by proceedings in condemnation.

The scheme of the charter is reasonably plain. The acquisition of real property for a public use is controlled by sections 1433, 1434, 1435, and these sections are unaffected by other provisions in the charter in reference to the need for appropriations for the purposes of contracts entered into pursuant to other provisions of the charter and unrelated to the acquisition of real property for a public use.

Section 149 has no application except the provision therein which specifically requires the assent of the comptroller to all agreements for the acquisition by purchase of any real estate or easement therein, and, where acquisition is by condemnation, requiring that the comptroller shall have thirty days' notice before an award involving an obligation to pay for such real estate shall be confirmed. We have compliance with this provision. Here the comptroller recommended the purchase in his communication to the board, recited in the November 20, 1931, resolution. He voted for the resolution, and on December 14, 1931, he signed, on behalf of the city, the instruments which purported to purchase the real property. These various acts very completely evidence the comptroller's " assent."

Provision is made in section 149 that no contract (except one, of a kind not here pertinent) shall be binding on the city unless there is a balance of an appropriation applicable thereto, and it requires an indorsement on the contract by the comptroller

that an appropriation therefor is available. That section, in so far as these provisions are concerned, has no application to the real property transaction here involved. It is to be read in connection with section 1541, which prohibits departments, boards or officers thereof from incurring any expenses unless there be an appropriation therefor; and section 1542, which provides that it shall be the duty of heads of departments and officers of the city charged with expending or incurring obligations " payable out of the moneys raised by tax in the said city " to limit their expenditures so that they shall not in any one year exceed the amount appropriated " by the board of estimate and apportionment for such purpose or objects," and further providing that no liability shall exist against the city in excess of the amount so appropriated for the several purposes.

The transaction here involved does not give rise to an obligation " payable out of the moneys raised by tax in the said city." Except as indicated, sections 149, 1541 and 1542 concern the actions of heads of departments and officers of the city in respect of matters which previously have been made and must be made the subject of appropriations by the board of estimate and apportionment. They do not relate to obligations created directly by the board of estimate and apportionment acting on behalf of the city, particularly where that board acts directly pursuant to and in the exercise of power conferred by the specific provisions of sections 1433, 1434 and 1435 in the acquisition of real estate for a public use, either by way of condemnation or private purchase.

The exercise of that power is not affected by the provisions of sections 149, 1541 and 1542, except as to the specific provision in section 149 requiring the assent of the comptroller to agreements for the acquisition of real estate. The undisputed facts establish that these contracts were made by the city by the direct action of the board of estimate and apportionment. The recitals in the contract so show and the declarations in the resolution so establish. The comptroller, signing pursuant to express authority of the board, was a mere appropriate ministerial agent of the board. The obligation of the city under each contract became complete when the plaintiff signed each instrument and thus agreed to comply with the terms of the resolution (*Beckrich* v. *City of North Tonawanda*, 171 N. Y. 292, 299) at the time the comptroller signed.

A change of policy by the board subsequent to December 14, 1931, when the instruments were signed by the plaintiff and the comptroller on behalf of the city, could not abrogate these valid existing contracts. On that day there had been compliance with the formalities of a valid contract of the city when made directly

through its governing body. Those formalities are those in sections 1433 and 1434 and the resolutions of the board of November 20, 1931, and June 12, 1931.

This view has support in authority. (*People ex rel. Schanck* v. *Green*, 64 N. Y. 499, 505.) In the *Schanck* case the leasing of real property was involved, rather than, as here, its purchase. There the common council directly authorized the leasing pursuant to specific authority so to do. Here the board of estimate directly acted pursuant to like express authority in the charter empowering it to purchase real property. In every other essential respect the facts are parallel. In that case there were statutory provisions similar to sections 149, 1541 and 1542 of the charter. They were held not to affect the validity of a contract authorized directly by the common council on behalf of the city. There, provision was made for the signing of the instruments on behalf of the common council by the comptroller; here, the same official was directed to act on behalf of the board of estimate and apportionment. There, as here, when the comptroller signed, he was not acting on behalf of or in respect to the department of finance, of which he is the head, or on behalf of a department for whose use the public property was being acquired. He was acting on behalf of the city governing body, which was directly acquiring an interest in real property for the city.

Courts should not be astute to enable a municipal corporation to disavow its just commitments or obligations, or to conduct itself respecting them in a manner violative of fair dealing, which they would not sanction were natural persons the parties involved.

The cases relied on by the defendant which enforce compliance with sections 149, 1541 and 1542 respecting an appropriation therefor in order that there may be a valid enforcible contract, are inapposite. (*McNulty* v. *City of New York*, 168 N. Y. 117; *Clarke Co.* v. *Board of Education*, 156 App. Div. 842; affd., 215 N. Y. 646; *Williams* v. *City of New York*, 118 App. Div. 756; affd., 192 N. Y. 541; *People ex rel. Carlin Construction Co.* v. *Prendergast*, 220 id. 725.) They each concern contracts made by the head of department for the purchase of goods or the doing of work for his own department of the city.

It is unnecessary to determine whether or not the resolution of November 20, 1931, may be construed to be an appropriation of $27,000 for the purposes of these contracts.

Accordingly, plaintiff is entitled to a specific performance of the instruments sued upon, as valid enforcible contracts.

The complaint will be deemed amended to conform to the proof, to meet the minor objection made thereto.

The judgment dismissing the complaint on the merits should be reversed on the law and the facts, with costs to appellant, and judgment of specific performance in favor of plaintiff directed, with costs.

LAZANSKY, P. J., YOUNG, HAGARTY and SCUDDER, JJ., concur.

Judgment dismissing the complaint on the merits reversed on the law and the facts, with costs to appellant, and judgment of specific performance in favor of plaintiff directed, with costs. Findings of fact and conclusions of law inconsistent herewith are reversed and new findings and conclusions will be made. Settle order on notice.