ATKIN'S WASTE MATERIALS, INC., Respondent, *v.* STEPHEN MAY et al., Constituting the Common Council of the City of Rochester, et al., Appellants.

Fourth Department, July 6, 1973.

A. *Vincent Buzard, Corporation Counsel* (*Steven A. Maas* and *James T. Townsend* of counsel), for appellants.

*Harris, Beach & Wilcox* (*James M. Hartman* and *Edward D. Bloom* of counsel), for respondent.

MOULE, J.   Since 1942 Atkin's Waste Materials, Inc. (Atkin's) operated a scrap processing yard in the City of Rochester (City) on land leased by it from the City.   Prior to 1957 the property was located in a "C-Light Industrial District", in which operation of a scrap processing yard was not a prohibited use.   In 1957 the area was rezoned to an "M-1 Industrial District", in which scrap processing was permitted only upon grant of a variance by the City's Zoning Board of Appeals.   In January, 1964 the Board granted a variance to Atkin's for the "term of the lease" and on April 7, 1964 the City and Atkin's entered into a new written lease with an expiration date of November 30, 1966.

After November 30, 1966 the lease was extended on a month-to-month basis, Atkin's continuing in possession, and on May 4, 1967 the City and Atkin's entered into a written renewal of the 1964 lease, to expire on November 30, 1971.   This agreement granted Atkin's an option to renew the lease for an additional five years, conditional upon the full and faithful performance of every term, covenant and condition of the lease.   One of the stated conditions of the lease was that after August 30, 1967 the lease permitted the burning of lead-covered cable and insulated copper wire, but banned the burning of all other material.   On December 30, 1970, Atkin's gave notice to the City that it elected to exercise its option to renew the 1967 lease and, on April 27, 1971, the City Council passed an ordinance rejecting the request of Atkin's for a renewal of the lease.

Atkin's then brought this action seeking specific performance of the lease.   At the trial its president testified that the only burning which took place on the premises was that of material per-

mitted under the lease and occasional cutting by torch of metallic materials into a size suitable for processing. There were numerous witnesses who testified, however, that at various times they saw a man pour flammable liquid on the contents of a loaded gondola railroad car standing in the yard and then set it afire. One witness testified that this was regular practice at Atkin's. Another testified that Sol Atkins, president of Atkin's, used to pour gasoline over cars and set them afire himself. Photographs were received in evidence of a man pouring fluid on a carload of scrap and of billowing black smoke clouds issuing from the yard. There was also evidence that steel mills preferred and paid more for scrap automobile metal with nonferrous materials burned away.

In *York Mtge. Corp.* v. *Clotar Constr. Corp.* (254 N. Y. 128, 133), the court stated: "It is * * * the appropriate function of an appellate court in equity cases to determine controverted questions of fact, and render final judgment thereon." We must, like the trial court, "weigh the relative probative force of conflicting testimony and the relative strength of conflicting interferences that may be drawn from the testimony." (*People ex rel. MacCracken* v. *Miller,* 291 N. Y. 55, 62; 7 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 5501.21).

The court correctly found that Atkin's had established a nonconforming use pre-existing the 1957 rezoning and that, in any event, it was the intent of both parties that the variance granted by the Zoning Board of Appeals should continue in existence after November 30, 1966 while Atkin's occupied the property on a month-to-month basis until the execution of the May 4, 1967 lease and during the period of that lease. The City could not disavow the continuing existence of the variance when it relied upon such variance itself in dealing with Atkin's. "Courts should not * * * enable a municipal corporation to disavow its just commitments or obligations, or to conduct itself respecting them in a manner violative of fair dealing, which they would not sanction were natural persons the parties involved." (*Lowe* v. *City of New York,* 240 App. Div. 484, 489, affd. 265 N. Y. 583).

However, the court erred in finding that Atkin's had substantially complied with the lease conditions and was entitled to exercise its option to renew the lease. The evidence clearly established that Atkin's regularly drenched gondola cars full of scrap metal with flammable liquid and set them afire to burn off undesirable materials. This constituted a failure to comply with a clear and definite condition of the lease which entitled the City to reject Atkin's attempted exercise of its option to renew.

" Where the right to renew a lease depends on the performance of definite conditions or covenants, the right cannot be exercised unless there is full compliance (*People's Bank of City of N. Y. v. Mitchell,* 73 N. Y. 406; *McIntosh v. Rector, Churchwardens and Vestrymen of St. Philip's Church,* 120 N. Y. 7)." (*Vanguard Diversified* v. *Review Co.,* 35 A D 2d 102, 104.)

We conclude that the court further erred in holding that the City ordinance rejecting Atkin's option renewal was an unconstitutional attempt to impair the City's contractual obligations to Atkin's (*St. Paul Gas Light Co.* v. *St. Paul,* 181 U. S. 142, 149).

The judgment should be reversed and judgment declared in favor of defendants in accordance with this opinion.

GOLDMAN, P. J., MARSH, SIMONS and HENRY, JJ., concur.

Judgment unanimously reversed on the law and facts with costs and judgment declared in favor of defendants in accordance with opinion by MOULE, J.