FRANK ORELLI et al., Appellants, v JEROME AMBRO et al., Constituting the Town Board of the Town of Huntington, Respondents.

Second Department, Feburary 9, 1976

*Dreyer & Traub (Charles Feit* of counsel), for appellants.

*Anthony R. Corso, Town Attorney (Jerome P. Wallin* of counsel), for respondents.

SHAPIRO, J. The plaintiffs commenced this action seeking to recover damages for breach of a contract for the sale of real property or, in the alternative, for specific performance of the contract. They appeal from an order of the Special Term which granted the defendants' motion for summary judgment and denied their application for like relief. We reverse.

The facts are not in dispute. In accordance with a duly adopted resolution of the defendant Town Board of the Town of Huntington (Town Board), legal notice was given that the town deemed it in the public interest to dispose of the subject property, "for which there is no municipal use". Simultaneously therewith, the Town Board issued a notice which stated that the property would be sold at public auction and that the minimum acceptable bid would be $39,000. The notice contained the following terms and conditions of sale:

"4) The Town of Huntington, at its option, may resell the property if the successful bidder, principals or assignees, if any, shall fail to comply with the terms of sale, and such bidder, principals or assignees shall, in addition to forfeiting any deposits made on account thereof, be held liable for any deficiency which may result from such resale. * * *

"13) The right is reserved to the Town Attorney of the Town

of Huntington to withdraw any parcel from the sale, and reject any and all bids.

"14) The Town, at its option, may cancel the sale at any time before the actual delivery of the deed. In such event, and also where the Town is unable to convey a marketable title subject to the provisions otherwise contained herein, the Town's sole liability in such event shall be limited to the return to the successful bidder of all payments made to the Town on account of the purchase, and the net cost of title examination without title insurance, as actually charged to the purchaser by the title company which is engaged to make a search of the premises for the purchaser, and the net cost of a survey, if any, and that thereupon the parties shall be mutually released from all obligations as a result of such purchase. However, if the purchaser or his successor or assignees is in default of any of the terms herein, then the purchaser or his successor or assignees shall forfeit all moneys paid hereunder as partial liquidated damages."

The auction was held on March 4, 1974; the plaintiff Frank Orelli was the successful bidder. Pursuant to the terms of sale, a check representing a down payment of 10% of the purchase price was delivered to and accepted by the Town. Thereafter, by resolution dated March 12, 1974, the Town Board, declaring it to be "in the best interest of the Town of Huntington that said bid be accepted", accepted Mr. Orelli's bid and authorized the sale of the subject parcel to him upon full payment of the purchase price.* Mr. Orelli thereupon assigned a one-half interest in the premises to the plaintiff Aboff.

---

\* The resolution reads;

Legal Notice<br>74-M No. 4

"Notice is Hereby Given that the Town Board of the Town of Huntington, New York, at a regular meeting thereof, held at the Town Hall, Main Street, Huntington, New York, on the 12th day of March, 1974, duly adopted a resolution, an abstract of which is as follows:

"Whereas, an auction was conducted on March 4, 1974, at 4:00 P.M. at 227 Main Street Huntington, New York, for the sale of land pursuant to Town Board Resolution dated December 18, 1973; and

"Whereas, the sum of Thirty-Nine Thousand ($39,000.00) Dollars was bid by one Frank Orelli for land located at or about the intersection of Stewart Avenue and New York Avenue, Huntington, New York, said property being more particularly bounded and described as follows: bounded on the west by New York and Stewart Avenues; bounded on the north and east by Map of 49 Lots of Ezzra Prime; bounded on the south by Map of 37 Lots of Huntington Real Estate Association; said property having a frontage of 155 1/4 feet, a depth of 169 1/4-feet, and containing an area of 19,434 1/4-square feet; and

Shortly thereafter, a representative of the Walt Whitman Federal Savings & Loan Association (Association) initiated negotiations with Mr. Aboff for the purchase of the subject premises. An offer of $70,000 by the Association was refused by the plaintiffs. The representative of the Association thereupon approached individual members of the Town Board with an offer to purchase the subject property at a higher price than the amount bid and accepted at the auction. The Town Board, in its brief, boldly admits this fact when it says:

"It is respectfully submitted that in the instant case the Town Board also had a duty to obtain the highest price for the subject property. They are trustees of publicly owned land and under a fiduciary duty to obtain the highest price. *When the Town Board became aware of the existence of an interested party who was willing to pay considerably more than Thirty-nine Thousand ($39,000.00) Dollars, it had no choice but to readvertise the property.* * * *

"In summary, it is respectfully submitted that the Town of Huntington and its Town Board were under a duty to obtain the highest possible price for the property and were justified in rescinding the first bid in order to accomplish this." (Emphasis supplied.)

The plaintiffs' causes of action arose when the Town Board rescinded its resolution approving the sale, authorized the return of the 10% down payment and readvertised the subject property for public auction. The terms and conditions of sale were identical with the prior notice of sale, except that the minimum bid was raised from $39,000 to $50,000. The second sale resulted in the acceptance of a bid made by the Association.

The Town Board does not deny that its rescisssion of the original sale was motivated solely by the subsequent offer to pay a higher price. Its position rests on the simple contention that, under the terms and conditions of the sale, it had an

---

"WHEREAS, such parcel is subject to Use Regulations permitted in a C-6 General Business District; and

"WHEREAS, it appears to be in the best interest of the Town of Huntington that said bid be accepted.

"Now, THEREFORE, BE IT RESOLVED:

"THAT THE SUPERVISOR is authorized to sell the above described land for the sum of THIRTY-NINE THOUSAND ($39,000.00) DOLLARS, which was the highest bid at the aforesaid auction, to said Frank Orelli, and upon completion of the full payment, to convey title to said Frank Orelli. Said sale is subject to a permissive referendum."

absolute right to cancel the sale to Mr. Orelli before delivery of the deed, for any or no reason at all, and that, having become aware that someone else was willing to pay a higher price, it was under an obligation to obtain that higher price. On the undisputed facts in this record, we hold its contentions to be without merit.

It is undoubtedly the law of this State that the reservation by a municipality of a right to rescind a sale will be upheld where no unfair advantage or bad faith is exercised by the local government or where the property involved is to be dedicated to public use (see *Min-Lee Assoc. v City of New York,* 28 AD2d 553, affd 27 NY2d 790; *Portnoy v City of New York,* 55 Misc 2d 382, affd 28 AD2d 959). However, the reservation of a right of cancellation does not, in and of itself, dissipate the mutuality of obligation which inheres in every contract (see *City of New York v Freedas,* 36 AD2d 534, and the cases cited therein). Since every contract carries with it the substantive requirement of good faith performance by both sides (see *Grad v Roberts,* 14 NY2d 70, 75; *Kirke La Shelle Co. v Armstrong Co.,* 263 NY 79, 87), a municipality is no more entitled to manipulate the sale price of its land among prospective buyers, in contravention of recognized contractual obligations, than is any private seller (cf. *Lowe v City of New York,* 240 App Div 484, affd 265 NY 583).

This limitation upon a muncipality's right to rescind contracts duly made with private buyers, together with the affirmative duty to perform such contracts in good faith, was expressed almost a century ago in *Moore v Mayor* (73 NY 238, 245), where the court said: "Individuals dealing with municipal authorities may, without incurring extra hazard, assume that acts of the general governing body within their general powers, which are published, represented and held out as valid with invitations to individuals to enter into engagements and expend money and labor on the faith of them, are in fact as represented, and to deal upon the faith of such assumption".

The philosophy underlying that rule is deeply and properly embedded in our jurisprudence. One Federal appellate court expressed the justification for the rule and its underlying rationale in the following language: "The obligation of a contract made between parties competent to contract cannot be impaired at the option of one of the contracting parties. This doctrine controls whether the party to the contract be a

sovereign state or an humble individual. It has been enforced against the action of states when the subject-matter of the contract was the exercise of the highest governmental and legislative powers,—the granting of a franchise. It has perpetuated an exemption from the power of taxation when such exemption has been the consideration for the contract between the sovereign and the citizen. And municipal corporations, mere creatures and agents of the sovereign, are not exempted from the operation of the rule. 'Upon authorized contracts within the scope of the charter powers of the corporation, and duly made by the proper officers and agents, they are liable in the same manner and to the same extent as private corporations.' Dill. Mun. Corp. § 935" *(Safety Insulated Wire & Cable Co. v Mayor and City Council of Baltimore,* 66 F 140, 144).

Those sentiments, expressing a doctrine of fair dealing and a proper limitation upon the arbitrary exercise of governmental discretion, are as relevant today as they were when uttered in 1895. Indeed, there exists a recognition, *sub silentio,* of just such a principle in the terms and conditions of the sale which the plaintiffs herein seek to enforce. There surely would have been no reason for providing, in the paragraph concerning the town's unconditional right to cancel, a limitation on liability in the event it was unable to convey a marketable title, unless the Town Board was aware of the limitation, inherent in its blanket declaration of nonliability.

Acceptance of the view urged by the Town Board, moreover, would be against public policy for it would enable a person interested in the property offered for sale to refrain from bidding at the auction—thereby keeping the price down—and thereafter offering a price in excess of the knock-down price, a procedure which, it is not denied, was actually indulged in in this case.

The Town Board, having accepted and approved Mr. Orelli's bid, may not avoid its obligations thereunder merely because it thereafter became aware that someone else was willing to pay a higher price for the property. The Town Board admits in its brief that "there are no published cases specifically and precisely in point with the instant case." We too have been unable to find any, probably for the reason that no litigant heretofore has been so bold as to espouse a contention so inherently one-sided. In the absence of any authority sustaining the Town Board's position, we feel that justice, equity and

fair dealing cry out for a construction of the notice of sale—admittedly drawn by the Town Board—which is "most equitable to both parties instead of the construction which will give one of them an unfair and unreasonable advantage over the other" *(Fleischman v Furgueson,* 223 NY 235, 241). Since, as noted, the facts are not in dispute, the order of the Special Term granting the defendants' motion for summary judgment and denying the plaintiffs' application therefor should be reversed, with $50 costs and disbursements, the plaintiffs' application should be granted, and the matter remanded to the Special Term for a determination of the appropriate relief to be awarded to the plaintiffs.

RABIN, Acting P.J., MARTUSCELLO, LATHAM and MARGETT, JJ., concur.

Order of the Supreme Court, Suffolk County, dated May 27, 1975, reversed, on the law, with $50 costs and disbursements; defendants' motion for summary judgment is denied and plaintiffs' application for summary judgment is granted; action remanded to Special Term for a determination of the appropriate relief. No fact questions were presented on this appeal.