**BOLT ELECTRIC, INC.,**
**Plaintiff–Appellant,**

v.

**The CITY OF NEW YORK,**
**Defendant–Appellee,**

**Spring City Electrical Manufacturing Co., Defendant.**

**No. 461, Docket 94–7390.**

United States Court of Appeals, Second Circuit.

Argued Oct. 31, 1994.

Decided April 13, 1995.

**2.** The apparent merits of the motion will no doubt be a significant factor in the exercise of that discretion.

466

William F. Cavanaugh, Jr., New York City (John N. Lieber, Patterson, Belknap, Webb & Tyler, of counsel), for plaintiff-appellant.

Helen P. Brown, Asst. Corp. Counsel of the City of N.Y., New York City (Paul A. Crotty, Corp. Counsel of the City of N.Y., Larry A. Sonnenshein, Jane Tobey Momo, Asst. Corp. Counsels of the City of N.Y., of counsel), for defendant-appellee.

Before: WINTER, MAHONEY, and GODBOLD,* Circuit Judges.

MAHONEY, Circuit Judge:

Plaintiff-appellant Bolt Electric, Inc. ("Bolt") appeals from a judgment entered March 31, 1994 in the United States District Court for the Southern District of New York, Sonia Sotomayor, *Judge,* that granted the motion of defendant-appellee The City of New York (the "City"), pursuant to Fed. R.Civ.P. 12(b)(6), to dismiss Bolt's complaint against the City for breach of contract. The district court ruled that Bolt could not recover under a written undertaking by the City's Department of Transportation (the "DOT") that allegedly guaranteed payment for materials ordered from Bolt by the general contractor on a City reconstruction project. This ruling was premised upon the City's failure to file the undertaking with the Comptroller of the City of New York (the "Comptroller"), and the Comptroller's consequent failure to provide the endorsement re-

* The Hon. John C. Godbold, of the United States Court of Appeals for the Eleventh Circuit, sitting by designation.

quired by § 6–101 of the New York City Administrative Code (the "Administrative Code"), *see infra* note 4, that there was an available appropriation or fund to finance the DOT guarantee. *See Bolt Elec., Inc. v. City of New York,* No. 93 Civ 3186 (SS), slip op. at 14–27, 1994 WL 97048 (S.D.N.Y. Mar. 23, 1994) (opinion supporting judgment).

We reverse the dismissal of Bolt's complaint against the City and remand.

## Background

Subject matter jurisdiction in this case is premised upon diversity of citizenship. New York law applies. This appeal is taken pursuant to Fed.R.Civ.P. 54(b), in accordance with which the district court determined that: "The claims against the City of New York are separate and distinct from the claims involving Spring City [Electrical Manufacturing Co.], and there being no just reason for delay of entry of a final judgment, [it is ordered] that final judgment be entered in favor of defendant the City of New York...." *Bolt,* slip op. at 27, 1994 WL 97048, at *12.

### A. The Allegations of Bolt's Amended Complaint.

Bolt's amended complaint (with attached exhibits) pleads that Naclerio Contracting Co., Inc. ("Naclerio") was selected by the City in 1987 to be the general contractor for a project involving the restoration of the Eastern Parkway in Brooklyn, New York (the "Project"). In accordance with state law and City requirements, Naclerio obtained performance and payment surety bonds from Aetna Insurance Co. ("Aetna").

On February 2, 1988, Naclerio ordered a number of items from Bolt for the Project, including "world fair" benches, hydrant fenders, and traffic sign posts. In 1990, the Project fell behind schedule, and Naclerio filed for bankruptcy protection. Bolt became concerned about Naclerio's ability to pay Bolt for materials ordered for the Project, and, in the summer of 1991, declined to accept any additional orders from Naclerio or to continue work on the February 1988 order unless the DOT guaranteed, in the event of a default by Naclerio, to purchase all materials ordered from Bolt by Naclerio for the Project.

As a result, Bernard McCoy, Deputy Commissioner of the DOT, sent a letter to Bolt dated September 25, 1991 (the "McCoy Letter") which stated in pertinent part:

I have been requested by Naclerio Contracting Co., Inc. to communicate with you regarding payment for materials supplied by your firm, to be incorporated into the [Project].

All conforming material ordered by Naclerio on their Purchase Order with you will be paid to Naclerio by the City of New York.

In the event Naclerio Contracting Co., Inc. defaults in its contract with the New York City Department of Transportation, the Department will purchase from Bolt Electric, Inc. all materials ordered specifically for the Eastern Parkway contract.

Immediately afterward, on October 1, 1991, Naclerio directed a purchase order to Bolt in the amount of $2,126,746.20 for lighting fixtures. Bolt thereafter performed under both outstanding purchase orders. In August 1992, after Bolt learned that the City was considering a declaration of default against Naclerio, Bolt obtained assurances from the City that the City stood by the commitment stated in the McCoy Letter.

On October 1, 1992, the City declared Naclerio in default. On October 26, 1992, prior to Bolt being informed about the default, City officials urged Bolt to continue its performance. Aetna assumed responsibility for completing the project pursuant to its performance bond. Aetna named a new general contractor and electrical contractor for the Project, but assured Bolt that it would be continued as the electrical supplier, and that the McCoy Letter would be honored.

Bolt was nonetheless terminated on February 12, 1993. The City and Aetna thereafter refused Bolt's demands that the City purchase the materials specified in the February 1988 and October 1991 purchase orders, as promised in the McCoy Letter, even though Bolt stood ready to perform, and had never breached, its obligations thereunder. Bolt

alleged that as a result, "the City ha[d] repudiated and breached the contract with Bolt memorialized in [the McCoy Letter]."

Bolt's complaint also alleged that Spring City Electrical Manufacturing Co. ("Spring City"), the new electrical supplier on the Project, had misused proprietary information supplied to Spring City by Bolt to displace Bolt as electrical supplier on the Project. Bolt's claims against Spring City are not involved in this appeal.

## B. The Decision of the District Court.

The City moved to dismiss Bolt's amended complaint, pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a claim upon which relief can be granted. According to the district court, for purposes of the motion, the City "accept[ed] the proposition that a contract between DOT and Bolt existed [, ... but] argue[d] that because the McCoy Letter does not comply with mandatory statutory requirements, ... it is an unenforceable contract, either because it is statutorily invalid or because it violates public policy." Bolt,

slip op. at 8, 1994 WL 97048, at *4 (footnote omitted).

Bolt argued that the McCoy Letter was authorized by § 6–102(b) of the Administrative Code,[1] which empowers a city agency, in the event of a default, to "complete the [contract] in the manner provided for in the contract," taken together with Article 48 of the agreement between the City and Naclerio (the "Naclerio Agreement"),[2] which provides the Commissioner of the DOT with broad authority, in the event of a default, to "have the work completed by such means and in such manner ... as he may deem advisable."

The district court concluded that formalities as to competitive bidding and authorized alternatives for original contracts were inapplicable, see infra note 6, and that Article 48 authorized a contract in anticipation of a declaration of default. Bolt, slip op. at 11–13, 1994 WL 97048, at *5–6. The court ruled, however, that there had not been compliance with provisions of the New York City Charter (the "Charter"),[3] the Administrative Code,[4] and the New York City Procurement Policy Board Rules (the "PPB Rules")[5] that

1. Section 6–102(b) provides:
   If the contractor or contractors shall fail in any respect to fulfill the contract within the time limited for its performance, then the agency in charge thereof shall complete the same in the manner provided for in the contract. The cost of such completion shall be a charge against such delinquent contractor or contractors.

2. Article 48 of the Naclerio Agreement ("Article 48") provides in pertinent part:
   The Commissioner [of the DOT], after declaring the Contractor in default, may then have the work completed by such means and in such manner, by contract with or without public letting, or otherwise, as he may deem advisable, utilizing for such purpose such of the Contractor's plant, materials, equipment, tools and supplies remaining on the site, and also such subcontractors, as he may deem advisable.

3. Charter § 328(a) provides:
   No contract or agreement executed pursuant to this charter or other law shall be implemented until (1) a copy has been filed with the comptroller and (2) either the comptroller has registered it or thirty days have elapsed from the date of filing, whichever is sooner, unless an objection has been filed [by the comptroller] pursuant to subdivision c of this section [relating to suspected corruption], or the comptrol-

ler has grounds for not registering the contract under subdivision b of this section [relating to unavailability of funds, failure to comply with procedural requirements, or debarment of the contractor].

4. Administrative Code § 6–101 provides in pertinent part:
   a. Any contract, except as otherwise provided in this section, shall not be binding or of any force, unless the comptroller shall indorse thereon the comptroller's certificate that there remains unexpended and unapplied a balance of the appropriation or fund applicable thereto, sufficient to pay the estimated expense of executing such contract, as certified by the officer making the same.

   . . . .
   c. It shall be the duty of the comptroller to make such indorsement upon every contract so presented to him or her, if there remains unapplied and unexpended the amount so specified by the officer making the contract, and thereafter to hold and retain such sum to pay the expense incurred until such contract shall be fully performed. Such indorsement shall be sufficient evidence of such appropriation or fund in any action.

5. PPB Rules § 5–07(b) provides in pertinent part:
   No contract or agreement executed pursuant to the New York City Charter or other law shall be effective until:

require the filing of contracts with, and their endorsement by, the Comptroller, rendering the McCoy Letter unenforceable. *Bolt,* slip op. at 14–20, 1994 WL 97048, at *7–9. The district court also ruled that the City was not estopped to assert noncompliance with these requirements, and that Bolt could not recover in quantum meruit. *Id.* at 20–27, at 1994 WL *9–12.

This appeal followed.

## Discussion

■ The district court's dismissal for failure to state a claim pursuant to Fed. R.Civ.P. 12(b)(6) is reviewed *de novo. Rent Stabilization Ass'n v. Dinkins,* 5 F.3d 591, 593 (2d Cir.1993) (citing *Citibank, N.A. v. K– H Corp.,* 968 F.2d 1489, 1494 (2d Cir.1992)). On a motion to dismiss under Rule 12(b)(6), the court must accept as true the factual allegations in the complaint, *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* —— U.S. ——, ——, 113 S.Ct. 1160, 1161, 122 L.Ed.2d 517 (1993); *Walker v. City of New York,* 974 F.2d 293, 298 (2d Cir.1992), *cert. denied,* —— U.S. ——, ——, 113 S.Ct. 1387, 1412, 122 L.Ed.2d 762, 784 (1993), and draw all reasonable inferences in favor of the plaintiff. *Walker,* 974 F.2d at 298. "The district court should grant such a motion only if, after viewing plaintiff's allegations in this favorable light, 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Id.* (quoting *Ricciuti v. New York City Transit Auth.,* 941 F.2d 119, 123 (2d Cir.1991)).

■ The City points to various provisions of the Charter, the Administrative Code, and the PPB Rules that provide detailed rules

(1) The executed contract or agreement and related materials have been filed with the Comptroller; and

(2) The Comptroller has registered the contract or thirty (30) days have elapsed from the date of filing, during which the Comptroller has neither raised an objection pursuant to subdivision (i) below [relating to suspected corruption] nor refused to register the contract pursuant to subdivision (h) below [relating to unavailability of funds, failure to comply with procedural requirements, or suspension or debarment of the contractor].

regarding the formation and approval of City contracts via competitive bidding and specified alternative methods.[6] We agree with the district court, however, that Administrative Code § 6–102(b), *supra* note 1, and Article 48, *supra* note 2, authorized the City to arrange for completion of the Project without replicating the procedures required for the initial formation of a contract with the City. We note also that the policy underlying § 6–102(b) is eminently sensible. It would be in most cases cumbersome, and in some cases calamitous, to require a replay of the panoply of City procedures attendant upon the initiation of a contract whenever events require the City to declare a midstream default in the performance of a contract.

■ We also agree with the district court's determination that, although Article 48 directly addresses only the City's authority to effectuate completion of the Naclerio Agreement "after declaring [Naclerio] in default," it implicitly authorized the City to act in anticipation of a default, at a juncture when Naclerio had filed in bankruptcy and Bolt refused to proceed further on the Project without the guarantee provided by the McCoy Letter. The McCoy Letter committed the City to make payment to Naclerio for "conforming material ordered by Naclerio on their purchase order with [Bolt]," presumably duplicating obligations already undertaken in the Naclerio Agreement, and to purchase directly from Bolt "materials ordered specifically for the [Project]" only *"[i]n the event [Naclerio] defaults* [emphasis added] in its contract with the [City]."

■ The case therefore turns upon the question whether the district court correctly

6. Detailed procedures are provided for solicitations by competitive sealed bids. *See, e.g.,* Charter § 313; Administrative Code § 6–111; PPB Rules §§ 3–02, 3–03. The requirements set forth in the Charter, the Administrative Code, and the PPB Rules for contracts awarded by methods other than competitive bidding include advance agency determination in writing, presolicitation review, public hearings, prior approval by the mayor or a deputy mayor, and filing and registration of the contract with the comptroller. *See, e.g.,* Charter §§ 317(b), 328(a); Administrative Code § 6–101(a); PPB Rules §§ 3–04, 4–02, 5–06, 5–07(b).

determined that because the McCoy Letter was not filed with and endorsed by the Comptroller in compliance with Charter § 328(a), *supra* note 3, Administrative Code § 6–101, *supra* note 4, and PPB Rules § 5–07(b), *supra* note 5, it was unenforceable. We cannot agree that this requirement for the initial formation of a valid contract, unlike all the others that were deemed dispensable in light of Administrative Code § 6–102(b) and Article 48, was a mandatory condition that, absent fulfillment, barred enforcement of the McCoy Letter.

It is undisputed, or at a minimum can be inferred in favor of Bolt in deciding a Rule 12(b)(6) motion to dismiss, that the Naclerio Agreement was properly filed with and endorsed by the Comptroller, thus resulting in the initial authorization of funds for the overall Project. Further, the primary purpose of requiring the Comptroller's certification of a contract is to assure the availability of funds to finance its performance, for the Comptroller is ordinarily obliged to endorse a contract if such funds are in fact available for that purpose. *See* Administrative Code § 6–101(c), *supra* note 4. Accordingly, we are not persuaded that the broad discretion provided to the City by Article 48 to "have the work completed by such means and in such manner ... as [is deemed] advisable" could not be exercised without a separate recertification by the Comptroller that funds originally authorized, and intended to be paid to Naclerio for work on the approved Project, could be paid directly to Bolt for Project materials in the event of Naclerio's default.

Furthermore, the New York Court of Appeals has decided that even failure to comply with a clear requirement for Comptroller certification of a contract will not bar recovery under that contract if funds for its performance are in fact available. In *Kooleraire Service & Installation Corp. v. Board of Education*, 28 N.Y.2d 101, 268 N.E.2d 782, 320 N.Y.S.2d 46 (1971), a case that is addressed neither in the district court's opinion nor in the City's brief on appeal, the Court of Appeals considered a contract between a contractor for heating and ventilating work and the New York City Board of Education (the "Board"). The contract explicitly provided that it would not be binding "unless the comptroller shall indorse hereon his certificate that there remains unexpended and unapplied ... a balance of the appropriation ... sufficient to pay the estimated expense of executing this contract as certified by the officers making the same." *Id.* at 105, 268 N.E.2d at 783, 320 N.Y.S.2d at 47. The comptroller's certification was withheld at the request of the Board, which contended that the contractor was thereby "precluded from recovering any money" on the contract. *Id.*

The unanimous Court of Appeals ruled against the Board, stating:

[T]he narrow issue is ... whether the failure, on request by the defendant, of the comptroller to follow a mandatory duty to certify that there is enough money to pay the expenses incurred for the contract, if there is in fact enough money, is a good legal defense.

... The parties could not reasonably have intended more than that the comptroller's certification was needed only as to the existence of the funds. There is no suggestion in any part of the instrument that they intended the comptroller should have a veto of the contract.

The general rule is, as it has been frequently stated, that a party to a contract cannot rely on the failure of another to perform a condition precedent where he has frustrated or prevented the occurrence of the condition.

. . . .

A provision of a contract having one purpose—the showing of sufficiency of money to do the work—ought not be utilized to accomplish another purpose, when in fact the money is there and should be certified.

*Id.* at 106–07, 268 N.E.2d at 784, 320 N.Y.S.2d at 48–49.

Thus, *Kooleraire* is authority for the proposition that even if the McCoy Letter required Comptroller approval, recovery would be allowed in the circumstances recited in

Bolt's amended complaint.[7] *A fortiori*, Bolt has stated a valid claim against the City.

■ At this juncture in the litigation, the only injury to the City that can be inferred is a potential exposure in damages resulting from its deliberate refusal to pay Bolt for conforming "materials ordered specifically for the Project," in contravention of the McCoy Letter, and Aetna's unexplained obtention of substitute materials from an alternate supplier. The law does not protect the City from that exposure. *See Genesco Entertainment v. Koch*, 593 F.Supp. 743, 747–48 & n. 11 (S.D.N.Y.1984) ("When acting in its corporate capacity, a municipality is held as accountable for its obligations as are individuals and corporations in the conduct of business.") (citing *Van Curler Dev. Corp. v. City of Schenectady*, 59 Misc.2d 621, 626, 300 N.Y.S.2d 765, 773 (Sup.Ct.1969); 27 N.Y.Jur.2d § 1210 (1983)); *Lowe v. City of New York*, 240 A.D. 484, 489, 270 N.Y.S. 216, 221 (2d Dep't) ("Courts should not be astute to enable a municipal corporation to disavow its just commitments or obligations, or to conduct itself respecting them in a manner violative of fair dealing, which they would not sanction were natural persons the parties involved."), *aff'd*, 265 N.Y. 583, 193 N.E. 331 (1934) (per curiam).

The City argues that L.K. Comstock & Company, Inc. ("Comstock"), Naclerio's electrical subcontractor, has entered into a settlement whereby Bolt was concededly paid in full for all the work Bolt performed under its purchase order from Comstock. It is clear, however, that this action involves separate purchase orders that Bolt received directly from Naclerio.

■ The City also argues that to the extent Naclerio failed to pay Bolt for materials delivered by Bolt to Naclerio for the Project, Bolt has a remedy under Aetna's payment bond. Even if true, this is not a proper basis upon which to dismiss Bolt's complaint against the City for failure to state a claim. Further, that remedy would not protect Bolt against the City's refusal to "purchase from [Bolt] all [undelivered] materials ordered specifically for the [Project]," as promised in the McCoy Letter.

■ At oral argument, the City contended that Article 48 only authorized the City to disregard the formal requirements for an original contract, *see supra* note 6, by calling upon Aetna to complete the Naclerio Agreement pursuant to its performance bond. This claim cannot be reconciled with the clear language of Article 48. Nor are we persuaded by the City's assertion that the McCoy Letter was invalid under Article 48 because the Deputy Commissioner, rather than the Commissioner, of the DOT signed it. Administrative Code § 6–102(b), *supra* note 1, provides that "the agency in charge" shall complete a contract in the event of default "in the manner provided for in the contract," and Article 48, *supra* note 2, states that the Commissioner of the DOT "may ... have the work completed by such means and in such manner ... as he may deem advisable." These provisions are not fairly read to require that only the Commissioner, and no delegate or agent of the Commissioner, may execute a contract in implementation of Article 48.

Finally, we do not address any claims by Bolt premised upon estoppel, quasi contract, or quantum meruit for two reasons. First, we need not reach them in view of our resolution of the contract issue. Second, they are not pled in Bolt's amended complaint, although the complaint is presumably amena-

7. The cases cited by the City regarding the requirement of Comptroller certification do not in any way undermine *Kooleraire*, for they all involved situations where the Comptroller's certification served important public policies. *See People ex rel. P.J. Carlin Constr. Co. v. Prendergast*, 220 N.Y. 725, 116 N.E. 1068 (1917) (per curiam) (mandamus will not issue to compel Comptroller to certify contracts for which no adequate appropriation has been made); *Brooklyn–Manhattan Transit Corp. v. City of New York*, 244 A.D. 745, 279 N.Y.S. 316 (2d Dep't) (per curiam) (recovery denied for "work done and labor performed without the certificate of the comptroller" in excess of authorized contract price and any available appropriation), *aff'd*, 269 N.Y. 547, 199 N.E. 664 (1935) (per curiam); *Prosper Contracting Corp. v. Board of Educ.*, 73 Misc.2d 280, 341 N.Y.S.2d 196 (App. Term 1973) (per curiam) (recovery denied on contract that Comptroller had refused to certify because of noncompliance with statutory requirements regarding advertisements for bids), *aff'd*, 43 A.D.2d 823, 351 N.Y.S.2d 402 (1st Dep't 1974) (per curiam).

ble to further amendment to address these matters, which were extensively considered in the district court's opinion and the briefs on appeal. *See* Fed.R.Civ.P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

### Conclusion

The judgment of the district court is reversed and the case is remanded for further proceedings not inconsistent with this opinion.