**BOLT ELECTRIC, INC., Appellant,**

v.

**The CITY OF NEW YORK,**
**Defendants–Appellees.**

**Docket No. 99–7047**

United States Court of Appeals,
Second Circuit.

Argued: Sept. 23, 1999.

Decided: Aug. 01, 2000.

William F. Cavanaugh, Jr., New York, NY, for Plaintiff–Appellant Bolt Electric, Inc.

Stuart D. Smith, New York, NY, for Defendant–Appellee City of New York.

Before: WINTER, Chief Judge, KEARSE, Circuit Judge, and MORDUE, District Judge.*

MORDUE, District Judge

## Background

Plaintiff-appellant Bolt Electric, Inc. ("Bolt") appeals from a judgment entered December 10, 1998, in the United States District Court for the Southern District of New York, Deborah A. Batts, Judge. The district court granted the motion of defendant-appellee City of New York ("City") for summary judgment dismissing Bolt's complaint in its entirety pursuant to Fed. R.Civ.P. 56(c), holding that there was no genuine issue as to any material fact. *See Bolt Elec., Inc. v. City of New York,* 1998 WL 851603 (S.D.N.Y. 1998). District Court jurisdiction is based on 28 U.S.C. § 1331(a)(1). Appellate jurisdiction is based on 28 U.S.C. § 1291. New York law applies. We reverse the award of summary judgment to the City and remand.

## Facts

In March 1987, the City awarded Naclerio Contracting Co., Inc. ("Naclerio") a $58.7 million contract for a reconstruction project on the Eastern Parkway in Brooklyn, New York ("project"). In July 1987, L.K. Comstock, Co. ("Comstock"), the electrical subcontractor on the project, issued a purchase order to Bolt to supply lighting and related electrical materials on the project for a total price of $2,118,774. Naclerio ordered nonelectrical materials for the project directly from Bolt pursuant

---

* The Honorable Norman A. Mordue, of the United States District Court for the Northern District of New York, sitting by designation.

to a separate purchase order reflected in a letter dated February 22, 1988.

In 1990, Naclerio filed a petition for Chapter 11 bankruptcy protection while continuing to perform on the project. In the summer of 1991, Comstock withdrew from the project. Bolt declined to accept additional orders from Naclerio or to continue work under the February 1988 purchase order without the City's assurance of payment.

Thus, the City wrote Bolt a letter dated September 25, 1991, bearing the signature of Tom Jelliffe, an Assistant Commissioner for the City Department of Transportation ("DOT"), over the typed signature line of Bernard McCoy, Deputy Commissioner of the DOT ("McCoy letter"). The McCoy letter stated:

I have been requested by Naclerio Contracting Co., Inc. to communicate with you regarding payment for materials supplied by your firm, to be incorporated into the above-captioned project.

All conforming material ordered by Naclerio on their Purchase Order with you will be paid to Naclerio by the City of New York.

In the event Naclerio Contracting Co., Inc. defaults in its contract with the New York City Department of Transportation, the Department will purchase from Bolt Electric, Inc. all materials ordered specifically for the Eastern Parkway contract.

On September 30, 1991, Bolt and Comstock entered into a settlement agreement pursuant to which Bolt received $119,110 from Comstock as payment in full for all materials delivered under the Comstock purchase order. Bolt also received full payment by Naclerio for all materials already delivered pursuant to the February 1988 purchase order. Bolt admits that it has been fully paid for all materials it delivered to Comstock and Naclerio for the project.

On October 1, 1991, Naclerio issued a purchase order to Bolt in the amount of $2,126,746.20 for lighting fixtures not yet delivered under the Comstock purchase order. On October 1, 1992, the City declared Naclerio in default of the project contract. Bolt claims that both before and after that date, City representatives directed Bolt to continue performing on the project and that, in reliance thereon, Bolt continued to work with its vendors and the City in planning, developing prototypes and securing architectural approval of lighting fixtures for the project. It is undisputed that, subsequent to the date of the McCoy letter, Bolt neither provided further materials to the project nor contracted with any vendor to do so.

Pursuant to a performance bond issued on April 7, 1987, Aetna Casualty and Surety Co. ("Aetna") assumed responsibility for completing the project and named Tully Construction, Inc. as completion contractor. Welsbach Electric, Inc., the new electrical subcontractor selected by Tully Construction, Inc., notified Bolt on February 12, 1993, that it had selected Spring City Electrical Manufacturing Co. instead of Bolt as lighting supplier for completion of the project. The City and Aetna thereafter refused Bolt's demands that the City purchase from Bolt the materials specified in the February 1988 and October 1991 purchase orders.

## Procedural History

On May 27, 1993, Bolt filed the Amended Complaint herein, setting forth a breach of contract claim against the City. Bolt claims that in reliance on the McCoy letter and the October 1991 purchase order it "expended substantial sums and incurred potential liabilities in its efforts to execute that purchase order" and that it continued to perform under the February 1988 purchase order. Bolt further claims that the City refused "to take delivery of and pay for the materials ordered by Naclerio," and seeks approximately $2,500,000 in damages. Bolt's claims against defendant Spring City Electrical Manufacturing Co., the electrical supplier on the project

selected by Welsbach Electric, Inc., have been settled and are not involved in this appeal.

By judgment entered March 31, 1994, the United States District Court for the Southern District of New York, Sonia Sotomayor, Judge, granted the City's motion to dismiss the complaint pursuant to Fed. R.Civ.P. 12(b)(6). The district court held that Bolt could not recover against the City under the alleged guaranty created by the McCoy letter because it had not been filed with and endorsed by the City Comptroller in compliance with section 6–101 of the New York City Administrative Code. On appeal, another panel of this Court disagreed, reversed the district court's judgment and remanded the case for further proceedings. *See Bolt Elec. Inc. v. City of New York,* 53 F.3d 465, 470 (2d Cir.1995).

The City thereafter moved for summary judgment pursuant to Fed.R.Civ.P. 56(c) on the ground that there was no genuine issue as to any material fact. The United States District Court for the Southern District of New York, Deborah A. Batts, Judge, determined, based on the "plain language" of the McCoy letter that it was a guaranty by the City to pay for materials "ordered specifically" by Bolt, which the Court read as referring to materials supplied by Bolt or ordered by Bolt from its vendors. The Court noted that after the date of the McCoy letter, Bolt never supplied any materials or entered into any contracts to provide any materials. Relying on the rule that where a guaranty is delivered in consideration of future sales, recovery on the guaranty is barred absent such future sales, the Court granted summary judgment and dismissed Bolt's complaint in its entirety. Bolt's appeal from this judgment is now before this Court.

### Arguments of the parties

Bolt argues that the district court erred in its interpretation of the McCoy letter. The plain language of the McCoy letter, Bolt argues, guarantees that in the event of Naclerio's removal from the project, "the City would step in and purchase from Bolt the materials ordered by Naclerio for the project[.]" **(Brief of Plaintiff–Appellant at 21.)** Bolt asserts that it gave consideration for the guaranty when it became obligated to supply the materials for the project upon accepting the October 1991 purchase order, but that it was relieved of the obligation to perform by the City's anticipatory breach when another electrical supplier was selected in February 1993.

The City urges that the plain language of the McCoy letter guarantees payment only for materials "ordered specifically" for the project and thus obligates the City to reimburse Bolt only for materials which Bolt ordered from its vendors specifically for the project. Inasmuch as Bolt ordered no materials specifically for the project other than those for which Bolt had already received payment, the City argues, Bolt is entitled to no payment. The City further argues that it was released from the alleged guaranty because Bolt and Naclerio unilaterally changed the terms of the underlying contract when they agreed to the October 1991 purchase order, in which the price of the goods to be provided by Bolt was substantially higher than the price of the goods remaining to be delivered under the Comstock order. The City also challenges the authority of McCoy and Jelliffe to enter into a guaranty for the amount in issue.

### Discussion

We review *de novo* the district court's award of summary judgment to the City. *See Terwilliger v. Terwilliger,* 206 F.3d 240, 244 (2d Cir.2000). Summary judgment is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

In reviewing a written contract, the Court's primary objective is to give effect to the intent of the parties as revealed by the language they chose to use. *See Seiden Assocs. v. ANC Holdings, Inc.,* 959 F.2d 425, 428 (2d Cir.1992). Where a contract is unambiguous, that is, where its words convey a definite and precise meaning upon which reasonable minds could not differ, its interpretation can be determined as a matter of law. *See id.* at 429. Where, however, reasonable minds could differ on the meaning of the language used, *see Readco, Inc. v. Marine Midland Bank,* 81 F.3d 295, 299 (2d Cir.1996), the meaning of the words becomes an issue of fact if there is relevant extrinsic evidence of the parties' actual intent. *See Seiden,* 959 F.2d at 428

The district court's award of summary judgment to the City is premised on its conclusion that there is no ambiguity in the third paragraph of the McCoy letter, which states that in the event that Naclerio defaults in its contract with the City, the City "will purchase from Bolt Electric, Inc. all materials ordered specifically for the Eastern Parkway contract." We find that in interpreting the third paragraph of the McCoy letter, reasonable minds could differ. The quoted language is reasonably susceptible to the construction placed on it by the City, i.e., that it refers to materials actually ordered by Bolt from its vendors for the project. Under this construction, the third paragraph of the McCoy letter is merely an agreement by the City to buy from Bolt any materials which Bolt had, at the time of Naclerio's default, already specifically ordered from its vendors in the course of its performance of the purchase orders. That being said, the third paragraph of the McCoy letter may also reasonably be read, as Bolt urges, as a guarantee that the City will, in the event of Naclerio's default, assume all obligations owed by Naclerio to Bolt. If the latter construction is adopted, the question then arises whether the City's promise was in-tended to apply to the October 1991 purchase order, which postdates the McCoy letter. The intentions of the parties cannot be ascertained from the face of the McCoy letter. Each party points to extrinsic evidence which it claims supports its view, which we find relevant to the issue of the parties' intent. Accordingly, questions of fact exist regarding the meaning of the third paragraph. The nature of the City's obligation under the third paragraph of the McCoy letter is also relevant to other issues raised on the motion, such as whether McCoy or Jelliffe had actual or apparent authority to enter into the guaranty allegedly contained in the McCoy letter, and whether the City was released from its obligations by an alleged failure of performance on the part of Bolt.

The district court erred in granting summary judgment. The judgment of the district court is reversed and the case remanded for further proceedings not inconsistent with this opinion.